E. Leon **KINCAID**, Plaintiff,

v.

**HARCOURT BRACE JOVANOVICH, INC., Defendant.**

**Civ. A. No. 93–4143–DES.**

United States District Court, D. Kansas.

Sept. 1, 1994.

Deanne W. Hay, Sloan, Listrom, Eisen-
barth, Sloan & Glassman, Topeka, KS, for
plaintiff.

K. Gary Sebelius, Catherine A. Walter,
Wright, Henson, Somers, Sebelius, Clark &
Baker, Topeka, KS, and Marshall F. Berman,
Epstein, Becker & Green, P.C., Washington,
DC, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

## I. INTRODUCTION

This case involves Plaintiff's claims that his rights were violated under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* and the Kansas Wage Payment Act, K.S.A. 44–313 *et seq.* Plaintiff alleges he was wrongfully denied severance pay benefits from his employer, defendant Harcourt, Brace and Jovanovich, Inc. Plaintiff's job was terminated when his division of the company was sold. Plaintiff, however, was offered, and accepted, employment with the buyer. The matter is currently before the court on Defendant's Motion for Summary Judgment. (Doc. 22). For the reasons set forth below, defendant's motion is granted.

## II. BACKGROUND

On, or about, May 10, 1991, as a result of the sale of the Farm Publications Division ("Farm Publications") of Harcourt Brace Jovanovich, Inc., ("HBJ"), plaintiff Kincaid terminated employment with HBJ. On, or about, that same day, plaintiff was offered, and accepted employment with Farm Progress Companies ("Farm Progress"), the company which bought Farm Publications. Kincaid's position with Farm Progress was not identical to the job he held with Farm Publications and eventually required relocation to a different city. Kincaid incurred certain expenses as a result of the move. The Farm Progress severance pay plan also differed from the HBJ plan.

When Farm Publications was sold, HBJ did not pay severance pay to any employee who accepted continued employment with the Farm Progress. HBJ did pay severance benefits to employees who were offered positions with Farm Progress but declined due to substantial personal hardship.[1] Plaintiff made a claim for benefits under the HBJ severance plan.

Plaintiff's request for severance benefits was considered by HBJ officials in at least

three departments: Insurance; Human Resources; and Legal. Plaintiff's requests were denied.

Plaintiff was informed that he was being denied benefits because he had accepted the job with Farm Progress and that he was not entitled to "double dip" both severance pay and continued employment.

Defendant belatedly provided plaintiff with copies of the severance pay plan description/summary plan description and IRS Forms filed for the years 1988 to 1991.

HBJ's Handbook for Employees ("Handbook") is disseminated to all personnel. When updated versions are distributed, employees are required to acknowledge in writing that they have received the update and that they are responsible for familiarizing themselves with any changes.

The 1986 edition and the 1988 edition contained the following:

This Handbook supersedes all previous employer statements, including any previous handbooks, manuals, memorandums, and oral or written statements pertaining to Company policies described here. It is effective immediately and applicable to all employees regardless of their date of employment. . . . When appropriate, the Company may of its own volition deviate from or make exceptions to particular provisions stated here.

HBJ reserves the right, on a case-by-case basis, to interpret its stated or usual policies, practices and procedures when the Company deems it necessary or appropriate. HBJ further reserves the right to modify or revoke, suspend, terminate, or change any or all such policies and procedures, in whole or in part, at any time, and without notice.

HBJ has long maintained a severance pay plan for employees. The plan is published in the Handbook. The plan did not change significantly until the 1988 Handbook. Prior to that edition, the severance pay plan excluded payments to those who were retired or were discharged, but did not speak to

---

**1.** The Handbook provisions reserved to HBJ the right to deviate from or make exceptions to par-    ticular provisions.

those employees who worked in a business unit which had the potential for being sold.

The 1988 edition addressed that issue and provided: "severance pay is never paid when . . . a department, division, or subsidiary is sold and the employee is offered continued employment by the buyer."

The revised Handbook was issued in January 1988. Farm Publications was sold on May 10, 1991. From 1988 to 1991, HBJ sold several operating units and never paid severance benefits to any employee who accepted a job offer made by the purchaser.

HBJ determined that some Farm Publication employees who were offered jobs by Farm Progress might decline the offer because of substantial hardship. HBJ made the decision that severance benefits would be paid to those employees who were offered jobs with Farm Progress, but who declined because of substantial hardship.

Of the more that 100 Farm Publications employees, 33 received job offers from Farm Progress. Two employees declined the offer because of substantial hardship and received severance pay. No one received severance pay *and* accepted a job offer with Farm Progress.

Plaintiff accepted the job offer from Farm Progress. Plaintiff subsequently called Farm Publications President Michael Pickett ("Pickett") and indicated he believed he was entitled to severance pay. Pickett stated that employees who accepted job offers were not eligible for severance pay.

On June 5, 1991, Kincaid wrote to the company claiming he was entitled to severance pay. He further asserted that his employment with Farm Progress did not constitute continued employment, that he had suffered from the change in location, from a reduction of base salary, and from a loss of benefits in the new job.

HBJ responded that Kincaid was not eligible for severance pay because he accepted the job offer from Farm Progress and concluded: ". . . . your claim is totally lacking in merit under settled contract law, is totally lacking in merit under settled Kansas law, is in any event preempted by federal benefits law, and that in no event are you entitled to

'double dip' both continued employment and severance."

Kincaid and HBJ engaged in an exchange of letters concerning severance pay rights, including whether Kincaid's claims under Kansas law were preempted by ERISA, whether Kincaid's assertion that he had not been advised that his severance benefits would be determined by whether he accepted or declined the job offer from Farm Progress.

Kincaid requested a Summary Plan Description, Statement of Material Modification, "the most recent Summary Annual Report," "the most recent Form 5500," and a copy of the written plan document. HBJ referred Kincaid to the Handbook and enclosed no other documents. HBJ eventually sent all the 5500s filed by the company.

In 1991, Kincaid filed a charge with the Division of Employment Standards, Kansas Department of Human Resources ("KDHR"). HBJ and Kincaid filed position statements. KDHR announced its intent to hold an administrative hearing. HBJ filed an action in this court to enjoin the hearing. Kincaid then filed the instant action and this court dismissed HBJ's action as moot.

### III. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which issues are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* Only genuine disputes over facts that might affect the outcome of

the suit under the governing law will preclude the entry of summary judgment. *Id.*

■ The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat. Laboratory*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is some genuine issue for trial. Fed.R.Civ.P. 56(c). *See also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting 56(e)).

■ Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

■ When examining a motion for summary judgment, the court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues").

■ Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. That is, the court decides whether there are any genuine factual issues that can be resolved only by a trier of fact because they reasonably may be resolved in favor of either party. *Id.*

## IV. DISCUSSION

■ The court has attempted to follow the general outline of the parties in its discussion of the issues before it. The court makes two initial findings which directly impact the ultimate decision of the court in granting defendant's motion for summary judgment. First, the court finds, as a matter of law, that the 1988 edition of the Handbook is applicable in this case. The Handbook superseded the 1986 edition and had been in use for over three years prior to the sale of Farm Publications to Farm Progress. Second, the court finds, as a matter of law, that plaintiff's claim pursuant to the Kansas Wage Payment Act, K.S.A. 44–313 *et seq.*, is preempted by ERISA.

### A. Kincaid's Entitlement to Severance Under HBJ's Plan

In Count I, Kincaid alleges that he was improperly denied severance benefits under the Plan established by HBJ.

There is no question that an unfunded severance pay policy, like HBJ's, is an "employee welfare benefit plan" within the meaning of ERISA. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327 (8th Cir.1989); 29 U.S.C. § 1002(1).

■ The plan, as set forth in the 1988 edition of the Handbook, clearly states that severance benefits will be paid if certain conditions are met.[2] It also clearly states that severance is never paid when a division of HBJ is sold and an employee is offered continued employment with the buyer. This clear and unambiguous language, leads to the conclusion that plaintiff was ineligible for any severance benefits because he was offered

---

**2.** It is noted that plaintiff argues that the 1988     edition of the Handbook is not operative.

and accepted employment with the buyer. Under elementary principles of contract law, courts do not alter the terms of contracts absent an ambiguity. *Awbrey v. Pennzoil,* 961 F.2d 928, 930–31 (10th Cir.1992). There is no ambiguity in the language of the Handbook.

█ If a plan gives the administrator of that plan the authority to determine eligibility or construe and interpret the terms of the plan, the court will defer to the administrator. *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956–57. HBJ by its own words "... reserves the right, on a case-by-case basis, to interpret its stated or usual policies, practices, and procedures, when the company deems it necessary or appropriate." HBJ did make exceptions for two employees in plaintiff's division who were offered employment by Farm Progress, but did not accept because of substantial hardship. No employee who was offered and accepted employment with Farm Progress was paid severance.

Even if an administrator deviates from the plan among similarly situated employees, there is no basis to conclude that the administrator acted arbitrarily in denying benefits to an individual such as Kincaid.[3] *Kelley v. American Telephone & Telegraph Co.,* 1989 WL 21010 (D.Kan.1989), citing *Redmond v. Burlington Northern R.R. Co. Pension Plan,* 821 F.2d 461, 469 (8th Cir.1987).

Kincaid's claim that he was unfairly treated in comparison to the two employees who received severance benefits is not persuasive. If Kincaid is awarded severance benefits, in addition to the salary he received from his continued employment with Farm Progress, the windfall he would experience is not what is contemplated under most severance benefit plans. Our Tenth Circuit Court of Appeals has "interpreted severance pay plans as forms of unemployment benefits, and not as bonus payments to be received on termination." *Awbrey,* 961 F.2d at 931.

A plain reading of HBJ's Plan which was contained in the 1988 edition of the Hand-

book and which was reasonably interpreted and administered by HBJ leads to court to conclude that HBJ Administrators did not abuse their discretion.

**B. Kincaid's Claim Under the Kansas Wage Payment Act K.S.A. 44–313, *et seq.***

█ Courts have scrutinized state wage and collection statutes like the Kansas Wage Payment Act for possible preemption by ERISA. *National Elevator Indus., Inc. v. Calhoon,* 957 F.2d 1555 (10th Cir.) *cert. denied,* ── U.S. ──, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992). Before preemption is found, a court must ascertain that: (1) a state law exists, (2) an employee benefit plan exists, and (3) the state law relates to the employee benefit plan. *Airparts Company, Inc. v. Custom Benefit Services of Austin, Inc.,* 28 F.3d 1062 (10th Cir.1994).

█ Here Kincaid's claim is based on a state law, the Kansas Wage Payment Act. Likewise, the severance pay plan is an employee benefit plan. The court, then, must consider whether the state law relates to the HBJ plan in a way that requires preemption.

█ ERISA preemption is "deliberately expansive" and the term "relate to" is to be given its "broad common-sense meaning." *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 508 (10th Cir.1991). State law claims which warrant preemption include those which provide an alternative cause of action for employees to collect benefits protected by ERISA. *Airparts,* 28 F.3d at 1064. *Holland v. Burlington Indus., Inc.,* 772 F.2d 1140 (4th Cir.1985), *aff'd sub nom., Brooks v. Burlington Indus., Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, *cert. denied sub nom., Slack v. Burlington Indus., Inc.,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Armco, Inc. v. Ludwick,* 3 Employee Benefits Cas. (BNA) 1574 (D.Kan.1982).

Kincaid's argument that the Kansas Wage Payment Act was not preempted by ERISA is not persuasive. Kincaid claims that HBJ's

---

**3.** Additionally, it can be well argued that the employees granted severance were not similarly situated to Kincaid in that they declined the job offer from Farm Progress while Kincaid accept-

ed. There is no statement by Kincaid that he would have accepted the one-time severance pay rather than the job offer had he understood the choices.

promise of severance pay for the years prior to the enactment of ERISA can be enforced under state law and is not subject to ERISA. However, unfunded severance pay plans do not vest and do not accrue in the sense funded plans do. Furthermore, unemployment as the result of termination is contemplated prior to the payment of any severance benefits. *Awbrey,* 961 F.2d at 931.

In this case, no severance benefits existed or could possibly vest until the time Kincaid was unemployed. The Kansas Wage Payment Act could not possibly be applicable to non-existent nor unvested funds. And since Kincaid was never unemployed, but accepted employment with Farm Progress immediately, no benefits were available to him. Kincaid's argument is without merit.

The court concludes, as a matter of law, that the Kansas Wage Payment Act is preempted by ERISA. Kincaid has no claim pursuant to the Kansas Wage Payment Act.

### C. Kincaid's Claim for Damages for HBJ's Failure to Provide ERISA Documents

■ It is within the sound discretion for the court to determine whether a plan administrator is liable for failure to timely supply certain documents. *Ziaee v. Vest,* 916 F.2d 1204 (7th Cir.1990), *cert. denied,* 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991). The amount of liability and the penalties imposed are also within the court's discretion. *Rosile v. Aetna Life Ins. Co.,* 777 F.Supp. 862 (D.Kan.1991) *aff'd,* 972 F.2d 357 (10th Cir.1992). A finding of bad faith by the plan administrator and prejudice to the plaintiff are not required before penalties for failure to provide documents may be awarded, but a court will surely consider such factors in making its determination. *Id.*

■ In this case, Kincaid was informed that the Handbook, which he possessed, contained the plan. The documents which HBJ possessed were belatedly provided for Kincaid's review. Although the documents could have been provided in a more timely manner, the court finds no bad faith on the part of the administrator. Similarly, Kincaid has made

no showing of prejudice. The court is not inclined to impose a penalty against HBJ.

■ Furthermore, given the court's finding that Kincaid is not eligible for severance pay because he was never unemployed, Kincaid is without standing to pursue damages based on the withholding of information. If individuals are clearly not entitled to benefits, it is expensive and inefficient to provide them with costly information or to face the prospect of damages if information is not provided. *Bruch,* 489 U.S. at 117, 109 S.Ct. at 957–58.

Kincaid's request for these damages is not tenable.

### D. Kincaid's Claim of HBJ's Breach of Fiduciary Duty

■ Kincaid claims that HBJ breached its fiduciary duty by failing to maintain required documents and procedures, by failing to provide requested documents, by failing to act in the interest of plan participants when it denied Kincaid's claim and by failing to timely inform Kincaid of the disposition of his claim.

Because the court has found that Kincaid was not entitled to benefits, as a matter of law, he lacks the requisite standing to bring this claim. Kincaid ceased to have an interest in the severance pay plan once he agreed to employment with Farm Progress. Having failed to meet the requirement for severance pay, pursuant to the 1988 Handbook, Kincaid no longer was a participant of the plan. *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 15 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992).

In *Alexander v. Anheuser–Busch Cos., Inc.,* 990 F.2d 536 (10th Cir.1993), the court denied standing to plaintiff who had failed to show a colorable claim on which to prevail in a suit for benefits. Standing was denied because it did not appear plaintiff could succeed on his claim for plan benefits. *Id.* at 539.

Kincaid was aware of the severance pay plan in the 1988 Handbook, was never unemployed, agreed to employment with Farm Progress, and became a Farm Progress em-

ployee. Under the plain terms of the plan, Kincaid was ineligible for benefits and, consequently, has no standing to pursue the claim.

Because the court finds that Kincaid lacks standing, it does not reach the issue of whether HBJ breached its fiduciary obligations. Likewise, Kincaid's claim for compensatory damages is not relevant.

### E. Kincaid's Allegations of Interference

■ Kincaid alleges that HBJ interfered with his rights protected under ERISA, specifically his right to receive severance pay. 29 U.S.C. § 1140.

As a matter of law, Kincaid's assertion must fail. In *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1461 (10th Cir.1991), the court held that a violation of § 1140 requires proof that an employer deprived the plaintiff of a vested right. In *Awbrey* the court clearly held that unfunded severance pay plans do not vest. 961 F.2d at 931. In addition, *Woolsey*, requires plaintiff to show that the employer's conduct negatively impacted the plaintiff's employment situation. *Woolsey*, 934 F.2d at 1461. In other words, plaintiff must show some discriminatory or wrongful way that the employer-employee relationship was changed by the actions of the employer. *Id.* Kincaid has made no such showing.

Having failed to meet the threshold test for a violation of § 1140, Kincaid's claim cannot be sustained.

The court, having viewed the evidence and drawn all inferences in a light most favorable to the plaintiff Kincaid, concludes that there is no genuine issue as to any material fact and that HBJ is entitled to judgment as a matter of law.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's motion for summary judgment (Doc. 22) is granted.

**IT IS FURTHER ORDERED** that defendants' objection to plaintiff's witnesses and exhibits (Doc. 37), Kincaid's objections to HBJ's exhibits (Doc. 38), and HBJ's motion to strike plaintiff's jury demand (Doc. 43) are all denied as moot.