# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2674

_____

| | | |
|---|---|---|
| Travelers Casualty and Surety Company of America, | * * * | |
| Appellant, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| IADA Services, Inc., | * * | |
| Appellee. | * | |

_____

Submitted: December 11, 2006
Filed: August 15, 2007 (Corrected: 08/16/2007)

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Travelers Casualty and Surety Company of America ("Travelers") appeals the judgment of the district court[1] dismissing its claims for contribution, indemnity, and restitution under the Employee Retirement Income Security Act of 1974 ("ERISA") and the law of Iowa. We agree with the district court that these claims are not

_____

[1]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

available under ERISA, and that the state-law claims are preempted by the federal statute.

## I.

IADA Services, Inc. ("IADA Services") performs administrative and investment services for IADA Insurance Trust (the "Trust"), an employee benefit plan for members of the Iowa Automobile Dealers Association. The Trust is governed by ERISA, which is regulated by the Department of Labor (the "DOL"). Travelers insures the Trust's trustees, but not IADA Services.

After an audit of the Trust, the DOL alleged that fees paid by the Trust to IADA Services violated various provisions of ERISA. The DOL claimed that since several of the trustees also served as directors of IADA Services, IADA Services was an ERISA fiduciary, meaning that the Trust could pay only IADA Services' "direct expenses." The DOL believed that the Trust had paid IADA Services more than its direct expenses, placing both the Trust and IADA Services in violation of ERISA.

The parties reached a settlement under which the DOL filed a complaint on behalf of the Trust against IADA Services, and IADA Services consented to judgment against it. To settle these claims, Travelers paid on behalf of the trustees the sum of $291,667.00 to the Trust and a penalty of $58,333.40 to the DOL. Although IADA Services was not insured by Travelers, the payments made by Travelers for the trustees also settled the related claims against IADA Services. Travelers reserved any right it might have to recover all or part of the payments from IADA Services.

By making the payments on behalf of the trustees, Travelers assumed any right of recovery the trustees might have against other parties. Travelers then sued IADA Services in state court, alleging the same facts and violations of ERISA that the DOL previously alleged, and IADA Services removed the case to federal court. Travelers

filed an amended complaint, which asserted claims for indemnification, contribution, and restitution under both ERISA and state common law. On IADA Services' motion for summary judgment, the district court held that ERISA provides no contribution claim for Travelers and that the state common-law claims were preempted by ERISA.

## II.

The first issue raised on appeal is whether the "federal common law of rights and obligations under ERISA-regulated plans," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987), should provide that an ERISA fiduciary found liable for violating its obligations under the statute may bring an action for contribution against another fiduciary that allegedly bears some responsibility for the violations. We conclude that there is no right of contribution under ERISA.

We begin by observing that the Supreme Court has declined to recognize a federal common-law right of contribution under three other federal statutes. In *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77 (1981), the Court held that the judiciary was not authorized to create a right of contribution for an employer that was liable for discriminating against employees in violation of the Equal Pay Act and Title VII of the Civil Rights Act. The Court reasoned that "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* at 97. Because the two statutes in question each established a comprehensive legislative scheme, the Court held that the judiciary may not "fashion new remedies that might upset carefully considered legislative programs." *Id.* In *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981), the Court for similar reasons declined to fashion a common-law rule of contribution among antitrust wrongdoers. Observing that the statutory scheme had existed for ninety years without amendment, and that nothing in the statute suggested

that Congress intended courts to alter or supplement the remedies enacted, the Court declined to assert the "broad power" to formulate a right of contribution. *Id*. at 646.

Travelers contends that *Northwest Airlines* and *Texas Industries* are not persuasive authority, because Congress specifically contemplated that federal courts would develop a federal common law under ERISA. That development of substantive law, moreover, is guided by the common law of trusts, *see Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989), and Travelers observes that the law of trusts traditionally has recognized a right of contribution among co-fiduciaries. *See* Restatement (Second) of Trusts § 258 (1959); George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 701, at 196 (2d ed. rev. 1982).

We think Travelers overstates the common law authority of the federal courts under ERISA. To be sure, the Supreme Court has recognized that Congress intended that "a body of Federal substantive law [would] be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 156 (1985) (quoting 120 Cong. Rec. 29942 (1974) (statement of Sen. Javits)). Several circuits have soundly concluded, however, that federal courts may adopt a common law principle under ERISA "only if necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Bollman Hat Co. v. Root*, 112 F.3d 113, 118 (3d Cir. 1997) (internal quotation omitted); *accord White v. Sun Life Assur. Co.*, 488 F.3d 240, 257 (4th Cir. 2007); *Smith v. Wal-Mart Assocs. Group Health Plan*, 238 F.3d 424, 2000 WL 1909387, at * 2 (6th Cir. 2000); *see also Cooperative Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 329-30 (5th Cir. 2004); *State Street Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 89 (1st Cir. 2001). A classic example of this sort of limited, interstitial lawmaking is the Supreme Court's identification of the proper standard of judicial review of a plan administrator's decisions, which was derived from the common law of trusts in *Firestone*. *See* 489 U.S. at 111-12.

Despite the authority to develop federal common law under ERISA, the Supreme Court has emphasized time and again that the statute's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Mertens v. Hewitt Assoc.s*, 508 U.S. 248, 254 (1993) (quoting *Russell*, 473 U.S. at 146-47). Because ERISA is "a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system," the Court has been "especially reluctant to tamper with [the] enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (internal quotations omitted). Significantly, the Court has relied directly on its decisions in *Northwest Airlines* and *Texas Industries* – which declined to recognize a right of contribution among joint wrongdoers under other federal statutes – as support for the strong presumption that Congress deliberately omitted unmentioned remedies from the comprehensive legislative scheme set forth in ERISA. *Russell*, 473 U.S. at 147 & n.15 (quoting *Northwest Airlines* and citing *Texas Industries*).

We recognize that a divided panel of the Second Circuit in *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991), concluded that *Northwest Airlines* and *Texas Industries* were distinguishable, because the Supreme Court in those cases had drawn a contrast with other areas of law, such as admiralty, where "[the] power to fashion rules of federal common law is well established." *Id.* at 17. Because Congress intended the development of federal common law under ERISA, the court thought the decisions in *Northwest Airlines* and *Texas Industries* held little sway. We note, however, that even in admiralty law, where an action for contribution is available in some circumstances, *see Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 111 (1974), the Court refrained from allowing contribution where such a remedy might interfere with an interrelated statutory scheme. *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 285-86 (1952); *see Northwest Airlines*, 451 U.S. at 97 n.40; *Cooper Stevedoring*, 417 U.S. at 112-13.

Since the Second Circuit's decision in *Chemung Canal*, moreover, the Supreme Court has reiterated more than once its admonition that notwithstanding the authority to fashion certain rules of federal common law under ERISA, the statute's "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Knudson*, 534 U.S. at 209 (internal quotations omitted); *accord Mertens*, 508 U.S. at 254. For reasons we explain here, we think the dissenting opinion in *Chemung Canal* and the unanimous panel of the Ninth Circuit in *Kim v. Fujikawa*, 871 F.2d 1427, 1432 (9th Cir. 1989), express the better view that a right of contribution is not available.

Travelers suggests that section 409 of ERISA, 29 U.S.C. § 1109(a), supports a right of action to ensure equitable apportionment of fault between co-fiduciaries, pointing to language that a breaching fiduciary "shall be subject to such *other equitable or remedial relief* as the court may deem appropriate." *Id.* (emphasis added). The beneficiary of the remedies established by this provision, however, is the ERISA *plan*. The statute declares that the fiduciary shall be liable "to make good to *such plan*" and "to restore to *such plan*" any profits which have been made through use of the plan's assets, and then allows for the possibility of "other equitable or remedial relief." *Id.* (emphasis added). We thus agree with the Ninth Circuit that section 409(a) "cannot be read as providing for an equitable remedy of contribution in favor of a *breaching fiduciary*." *Kim,* 871 F.2d at 1432.

Nor are we persuaded to infer that Congress inadvertently omitted a right to contribution from ERISA's remedial scheme. The statute pays specific attention to the rights and obligations of fiduciaries in some respects, but makes no reference to a right of contribution. ERISA provides that one fiduciary will be liable for the breach of a co-fiduciary in certain circumstances, 29 U.S.C. § 1105(a), and it voids any agreement that purports to limit a fiduciary's responsibility or liability, except for those specifically allowed by statute. *Id*. § 1110(a). To limit a fiduciary's exposure,

ERISA allows the fiduciary, the plan, an employer, or an employee organization to purchase insurance to cover a fiduciary's liability. *Id.* § 1110(b). Given the comprehensive nature of the overall statutory scheme, we have followed the Supreme Court's lead and concluded elsewhere that the statute's failure to include certain remedies should not be construed as an oversight. *Knieriem v. Group Health Plan, Inc.* 434 F.3d 1058, 1061 (8th Cir.), *cert. denied*, 126 S. Ct. 2969 (2006); *see also Russell*, 473 U.S. at 146 ("The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme."). There is nothing about the circumstance of co-fiduciary liability that calls for a different approach.

There are policy arguments for and against a right of contribution among joint wrongdoers. Although the common law of trusts and some federal statutes provide for contribution rights, *see Texas Industries*, 451 U.S. at 640 n.11, other statutes do not. *See id.* at 646; *Northwest Airlines*, 451 U.S. at 98. There are certainly equitable arguments for allowing contribution among wrongdoers, *see Chemung Canal*, 939 F.2d at 16, but there are considerations weighing on the other side. Some have argued that a contribution rule is inefficient, because it increases administrative costs without increasing deterrence, William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law* 201-02 (1987), and a legislature may conclude that it could maximize the deterrent effect of civil liability by declining to "ameliorate the liability of wrongdoers" through contribution rights. *See Texas Industries*, 451 U.S. at 639. We find apt the observation of the Supreme Court that whether to provide for a right of contribution is "'a matter of high policy for resolution within the legislative process after the kind of investigation, examination, and study that legislative bodies can provide and courts cannot.'" *Id.* at 647 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 317 (1980)). Accordingly, we hold that ERISA does not create a right of contribution for Travelers against IADA Services, another fiduciary.

We also agree with the district court that the state common-law claims brought by Travelers are preempted by ERISA. ERISA's comprehensive legislative scheme not only generates a strong presumption against creating additional federal remedies, it also has a strong preemptive effect on state-law causes of action. Section 502(a), 29 U.S.C. § 1132(a), sets forth a comprehensive civil enforcement scheme that includes a opportunity for a fiduciary to obtain "appropriate equitable relief" in certain circumstances. *Id*. § 1132(a)(3)(B). The district court concluded that Travelers' federal claims for contribution, indemnity, and restitution were not actionable under section 502(a), and Travelers has not appealed that ruling.

The Supreme Court has explained that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life*, 481 U.S. at 54. The same can be said about remedies available to ERISA-plan fiduciaries under section 502(a). Given that Congress made a policy choice to exclude a remedy of contribution for breaching fiduciaries, it would undermine the comprehensive federal scheme to permit an action under state law for that same remedy. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).

The state-law claims alleged by Travelers in this case clearly arise from breaches of duties by a fiduciary in an ERISA-regulated plan. The complaint alleges that IADA Services breached its fiduciary duties under ERISA, listing in detail ERISA statutes allegedly violated and prohibited transactions allegedly committed. As the district court noted, the state common-law claims are predicated on joint liability, so Travelers would be required to establish the trustees' liability for the ERISA violations in order to prove its state-law claims. *See Ke-Wash Co. v. Stauffer*

*Chemical Co.*, 177 N.W.2d 5, 10-11 (Iowa 1970). To apportion liability, the court would have to weigh the relative culpability of the co-fiduciaries for the ERISA violations to allocate responsibility between them. *See Franke v. Junko*, 366 N.W.2d 536, 539-40 (Iowa 1985). Thus, interpretation of the ERISA-regulated benefit plans forms "an essential part" of the state-law claims, and contribution liability would exist only because of IADA Services' involvement in the administration of an ERISA-regulated benefit plan. *See Davila*, 542 U.S. at 213. To recognize a state-law cause of action that supplements the federal scheme in these circumstances would "pose an obstacle to the purposes and objectives of Congress," *Pilot Life*, 481 U.S. at 52, and the state common-law claims are therefore preempted.

*         *         *

For the foregoing reasons, the judgment of the district court is affirmed.

_____