CHEMUNG CANAL TRUST COMPANY, as Trustee of the Fairway Spring Company, Inc. Restated Pension Plan; William H. Brown; Joseph R. Peters, Plaintiffs,

Chemung Canal Trust Company, as Trustee of the Fairway Spring Company, Inc. Restated Pension Plan, Plaintiff–Appellee,

v.

SOVRAN BANK/MARYLAND, Defendant–Appellant.

SOVRAN BANK/MARYLAND, Third–Party Plaintiff–Appellant,

v.

FAIRWAY SPRING CO., INC., Theodore Peterson, as President and Director of Fairway Spring Co., Inc.; Donald R. Peterson, as Vice President and Director of Fairway Spring Co., Inc.; Dorothy Tarby, as Secretary–Treasurer and Director of Fairway Spring Co., Inc.; John Doe; Jane Doe, as members of the Investment Committee of the Fairway Spring Co., Inc. Restated Retirement Income Plan; Lynn G. Keyser, Third–Party Defendants,

Fairway Spring Co., Inc.; Theodore Peterson, as Director of Fairway Spring Co., Inc.; Donald R. Peterson, as Vice President and Director of Fairway Spring Co., Inc.; Dorothy Tarby, as Secretary–Treasurer and Director of Fairway Spring Co., Inc. and Lynn G. Keyser, Third–Party Defendants–Appellees.

No. 1624, Docket 91–7194.

United States Court of Appeals, Second Circuit.

Argued June 5, 1991.

Decided July 25, 1991.

William F. Hanrahan, Washington, D.C. (Groom and Nordberg, Chtd., Robert P. Gallagher, Stephen M. Saxon, Lonie Hassel, of counsel), for third-party plaintiff-appellant.

Kenneth A. Payment, Rochester, N.Y. (Harter, Secrest & Emery, Robert F. Pizzo, of counsel), for third-party defendants-appellees.

Edward B. Hoffman, Elmira, N.Y. (Sayles, Evans, Brayton, Palmer & Tifft, Donna L. Mitchell), for plaintiff-appellee.

Before OAKES, Chief Judge, and PRATT and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Defendant-third-party plaintiff-appellant Sovran Bank/Maryland ("Sovran") appeals from a judgment of the United States District Court for the Western District of New York, Michael A. Telesca, *Chief Judge,* entered pursuant to a certification under Fed. R.Civ.P. 54(b). The judgment dismissed Sovran's counterclaim and third-party complaint based on the court's holdings that (1) as a former fiduciary, Sovran had no standing to sue on behalf of the Fairway Spring Co., Inc. Restated Retirement Income Plan ("the plan"), under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, ("ERISA"), and (2) Sovran had no cause of action for contribution or indemnity under ERISA. 753 F.Supp. 81. We agree with the district court that ERISA does not grant standing to former fiduciaries, and we affirm the judgment on that issue. However, we conclude that ERISA does not preclude a cause of action for contribution or indemnity. We therefore reverse the judgment of the district court on that issue and remand for further proceedings consistent with this opinion.

## BACKGROUND

Fairway Spring Company, Inc. ("Fairway") established the plan in 1981 to provide retirement benefits for its employees. Under the terms of the plan, Fairway, acting through its officers, has the authority to appoint a trustee for the plan. As the plan's first trustee, Fairway appointed Glen Dawson, who made imprudent investments and engaged in transactions prohibited under ERISA's fiduciary standards.

Effective December 1, 1984, Fairway removed Dawson as trustee, and appointed Sovran as his replacement, effective February 1, 1985. During the two-month interim period, Lynn Keyser, counsel to Fairway, exercised fiduciary authority over the plan and its assets.

Some of Dawson's imprudent investments performed adequately for a time after Sovran's appointment as trustee. Eventually, however, payments owed to the plan under some of these investments ceased. In 1989, Fairway removed Sovran as trustee and appointed Chemung Canal Trust Company ("Chemung") as the new trustee.

Chemung, as the present trustee of the plan, along with two beneficiaries of the plan, brought this ERISA action against Sovran, the former fiduciary, alleging that Sovran had breached its fiduciary duties to the plan. Chemung sought to recover for the losses caused by Sovran's lack of prudence and due diligence with respect to some of the original investments made by Dawson but continued by Sovran, as well as two other questionable investments that

Sovran itself had entered into on behalf of the plan.

Sovran counterclaimed against Chemung and filed a third-party complaint against Fairway, its officers, certain members of an investment committee of the plan, and Lynn Keyser, counsel to Fairway (hereinafter collectively referred to as "Fairway"). Sovran alleged that Fairway had breached its fiduciary duties by failing to monitor Dawson's activities, to correct Dawson's fiduciary breaches, and to disclose them to Sovran. It claimed that Fairway had a duty to monitor Dawson's performance, and that it knew or should have known of Dawson's fiduciary breaches, but, without acknowledging or taking action to remedy those breaches, Fairway had merely removed Dawson as trustee. As against Chemung, Sovran's successor trustee, Sovran alleged that Chemung had failed to adequately evaluate and pursue claims of the plan and that this failure contributed to the losses which were the subject of its present suit against Sovran. Sovran requested relief directly on behalf of the plan, as well as contribution or indemnity should it be found liable to the plan.

Fairway moved to dismiss Sovran's third-party complaint, pursuant to Fed.R.Civ.P. 12(b)(6), claiming that ERISA did not allow claims for contribution or indemnity. Chemung joined in this motion. In addition to the contribution and indemnity argument, Chemung argued that Sovran lacked standing to sue on behalf of the plan, because it was no longer a fiduciary.

The district court granted these motions and dismissed the counterclaim and third-party complaint, holding (1) that Sovran had no standing and (2) that there was no cause of action for contribution or indemnity under ERISA. The district court then entered an order pursuant to Fed.R.Civ.P. 54(b), authorizing entry of a final judgment as to those claims, thereby permitting an immediate appeal. Such an appeal, wrote the court, "would promote judicial economy and reduce the expenses of both parties by eliminating the potential for duplicative litigation involving substantially similar facts". Sovran now appeals both holdings.

## DISCUSSION

### A. *Standing*

■ Sovran claims that as a former fiduciary it has a right under ERISA to sue on behalf of the plan to recover for the plan's losses. We disagree. Section 502 of ERISA, 29 U.S.C. § 1132(a), specifies those who may bring actions under ERISA and the types of actions each may pursue. The statute names only three classes of persons who may commence an action, and a former fiduciary is not one of them. Those who can sue are: (1) a participant or beneficiary, (2) the Secretary of Labor, and (3) a fiduciary. 29 U.S.C. § 1132(a).

We have previously determined that, in the absence of some indication of legislative intent to grant additional parties standing to sue, the list in § 502 should be viewed as exclusive. *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir.1983), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983) (rejecting standing of plan itself); *see also Tuvia Convalescent Center, Inc. v. National Union of Hospital & Health Care Employees*, 717 F.2d 726, 730 (2d Cir.1983) (rejecting standing of employer). There is no indication of any legislative intent to grant a former fiduciary a continuing right to sue on behalf of the plan; consequently, *Pressroom* controls, and Sovran's claim falls for lack of standing.

The eighth circuit, in *Blackmar v. Lichtenstein*, 603 F.2d 1306 (8th Cir.1979), considered the same issue under a fact pattern that was even stronger for Sovran's position. Nevertheless, that court held that a former fiduciary does not have standing to sue on behalf of the plan, even when he was removed for the very purpose of preventing his bringing suit. There, the trustee, Blackmar, filed suit against former trustees and informed the employer that he planned to join the employer as a party defendant. To prevent this, the employer promptly removed Blackmar as trustee and appointed a successor. Blackmar challenged his removal and the appointment of new trustees, thus raising the issue of

whether a former fiduciary had standing to challenge such an appointment. The eighth circuit held that once the former trustee had been removed, he ceased to be a fiduciary and could no longer sue for violations of fiduciary duty: "Adequate protection is afforded the beneficiaries under Section 502. * * * In short, Blackmar no longer has an interest in this suit." *Id.* at 1310.

Sovran claims that *Blackmar* is distinguishable because Sovran is not challenging the validity of Chemung's appointment, as was the case in *Blackmar*, but instead seeks merely to advance claims on behalf of the plan. We reject the proffered distinction. The crux of the eighth circuit's holding was that a former fiduciary no longer has an interest in protecting a plan to which it is now a complete stranger. Like Blackmar, Sovran is no longer a fiduciary of the plan and cannot be deemed one for purposes of asserting a claim under ERISA. Thus, we affirm the district court's rejection of standing for former fiduciaries under ERISA.

### B. *Contribution or Indemnity*

We next address the issue of whether ERISA permits a claim for contribution or indemnity. The district court rejected such a cause of action, relying primarily on the methodology of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a private right of action should be implied from a statute. Sovran argues that the district court erred by using an inappropriate test to dismiss its contribution claims. It contends not that contribution should be recognized as an implied right of action, but that congress intended to embody fundamental trust law principles, including contribution, into the federal law governing employee benefit plans, and directed the courts to develop a substantive federal common law of ERISA, by drawing upon those principles. Sovran recognizes that ERISA does not explicitly provide for contribution and indemnity, but argues that because a fiduciary's right to seek contribution and indemnity is a fundamental principle of equity jurisprudence governing the law of trusts, these remedies

should be incorporated into the federal common law of ERISA.

The Supreme Court has indicated in other contexts that a right to contribution may be recognized "through the affirmative creation of a right of action by Congress, either expressly or by clear implication", or "through the power of federal courts to fashion a federal common law of contribution". *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). In ERISA, congress never dealt with contribution expressly, so the question is whether such a right can be recognized either by implication from the statute, or as a part of federal common law.

Initially, we agree with Sovran that the *Cort v. Ash* methodology is an inappropriate tool for analyzing this case. In *Cort v. Ash*, the Supreme Court devised a four-part test to determine whether a right of action should be implied from a federal statute. If applied here, the *Cort v. Ash* test would cause an automatic dismissal of Sovran's claims, because the first part of the test asks whether the party seeking the remedy [Sovran] is a member of the class for whose benefit the legislation was intended [plan participants and beneficiaries], and clearly, ERISA was enacted to protect plan participants and beneficiaries, not former fiduciaries such as Sovran. 29 U.S.C. § 1001. Such an analysis is too simplistic, however, for the problem before us.

■ Here, we are not dealing with the usual "right of action", and it would be misleading to so characterize a defendant's right of contribution. A plaintiff who brings an action does not care whether the defendant has a right of contribution against others, as long as the plaintiff recovers the amount to which he is entitled. Contribution deals with allocating obligations among co-defendants and/or third parties. The "right of action" for contribution is no more than a procedural device for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses, and without regard to which particular persons

plaintiff chose to sue in the first instance. The four tests of *Cort v. Ash* are not well-designed to ferret out congressional intent at this level of dispute resolution.

■ The next question, whether federal courts have power to fashion a federal common law under ERISA, need not detain us very long. The Supreme Court has left no doubt that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). It has stated: "ERISA abounds with the language and terminology of trust law. * * * ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. §§ 1101–1114, 'codify and make applicable to ERISA fiduciaries certain principles developed in the evolution of the law of trusts.'" *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954 (citations omitted). *See also Donovan v. Bierwirth,* 754 F.2d 1049, 1055 (2d Cir.1985) ("We thus look to principles developed under the common law of trusts, which in large measure remain applicable under ERISA."); *Eaves v. Penn,* 587 F.2d 453, 462–63 (10th Cir.1978) ("In developing a law of remedies, the Congress intended the federal courts to draw on principles of traditional trust law."). We thus hold that the federal courts have been authorized to develop a federal common law under ERISA, and in doing so, are to be guided by the principles of traditional trust law.

■ We must next determine whether traditional trust law provides for a right of contribution among defaulting fiduciaries. Indisputably, it does. Chemung and Fairway do not seriously contend to the contrary, nor could they, because the right of contribution among co-trustees has been for over a century, and remains, an integral and universally-recognized part of trust doctrine. *See* Restatement (Second) of Trusts § 258 (1959); Bogert, *The Law of Trusts and Trustees,* § 701 (2d ed. rev. 1982) (citing *Perry v. Knott,* 4 Beav. 179

(1842); *Sherman v. Parish,* 53 N.Y. 483 (1873)).

■ We thus conclude that the traditional trust law right to contribution must also be recognized as a part of ERISA. By so concluding, we are not creating a right from whole cloth. We are simply following the legislative directive to fashion, where congress has not spoken, a federal common law for ERISA by incorporating what has long been embedded in traditional trust law and equity jurisprudence. Such a rule would have no financial impact on the recovery of plaintiffs, the intended beneficiaries of ERISA. They would continue to recover their full loss from any or all breaching fiduciaries, each of whom would be jointly and severally liable to the plaintiffs.

We see no reason to reject contribution as an equitable means of apportioning wrongdoing in this context. Although it is arguable that injecting contribution claims into an already complex area of litigation will only further complicate matters and build costs, we think that even a breaching fiduciary should be entitled to the protection of contribution that has been traditionally granted fiduciary defendants under the equitable provisions of trust law. There is no reason why a single fiduciary who is only partially responsible for a loss should bear its full brunt. Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to sue.

In arguing that a cause of action for contribution should not be recognized under ERISA, Fairway and Chemung rely heavily on *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), and *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). In *Texas Industries,* the Supreme Court rejected a defendant's right to seek contribution from a co-conspirator in a treble damages claim under the antitrust laws. It first rejected contribution under the implied right of action analysis, and then rejected it as part of a court's power to create federal common law under a particu-

lar statutory scheme. The Court looked to the legislative histories of the Sherman Act and the Clayton Act and determined that congress did not intend to confer common law rule-making power on the courts in the context of those treble damage remedies. *Id.* at 644–45. It concluded that neither act conferred power on the court to formulate a right to contribution. *Id.* at 646.

Similarly, in *Northwest*, the Supreme Court declined to recognize a right to contribution under the Equal Pay Act or Title VII of the Civil Rights Act. It rejected such a right under the implied right of action analysis as well as under a power to create federal common law, because the Court found that congress had not authorized common law rule-making power under either Title VII or the Equal Pay Act. *Id.* 451 U.S. at 97, 101 S.Ct. at 1583. Thus, in both *Texas Industries* and *Northwest*, the Supreme Court rejected invitations to include a right of contribution as part of the federal common law surrounding the relevant statutes, because it concluded that congress had not authorized courts to do so in connection with those particular statutes.

*Texas Industries* and *Northwest* are distinguishable, however. Although it rejected the authority of the federal courts to develop a federal common law under the antitrust laws, Title VII, and the Equal Pay Act, the Supreme Court drew a sharp contrast with other areas of the law, such as admiralty and labor relations, where our power to fashion rules of federal common law is well established. Just as with the Labor Management Relations Act, under ERISA, both the legislative history and the statute itself clearly contemplate development of a federal common law. Thus, *Texas Industries* and *Northwest* are not impediments to our holding that, under ERISA, a federal common law, including the traditional trust concept of a right to contribution, is appropriate.

Fairway and Chemung also argue that the instances where the Supreme Court has recognized the need to formulate federal common law are limited to situations in which (1) a federal rule of decision is necessary to protect unique federal interests, or (2) congress has specifically given the courts the power to develop substantive law. *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2066. Clearly, no unique federal interest is involved in this case, *see id.* at 642, 101 S.Ct. at 2067, and Fairway and Chemung contend that congress's intent to augment ERISA with certain common law principles should not be viewed as an assignment to the courts to create distinct and substantive rights for persons the statute was not meant to benefit.

In other words, Fairway and Chemung, relying on *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985), argue that the authority to develop common law does not include the power to create new substantive rights. They claim that because congress could easily have expressly included a right to contribution among the remedies allowed under ERISA, but intentionally chose not to do so, we should not recognize such a right.

In *Russell*, the Supreme Court dismissed a plan beneficiary's action to recover extra-contractual, compensatory and punitive damages, which were not expressly authorized under ERISA. It found, first, that the legislative history did not indicate that congress intended the particular relief sought. Second, it turned to the statute and found a comprehensive legislative scheme which indicated that the omission of such a remedy was intentional:

> The six carefully integrated civil enforcement provisions found in [29 U.S.C. § 1132(a) ] of the statute as finally enacted, * * * provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated stature.'

*Russell*, 473 U.S. at 146, 105 S.Ct. at 3092 (citation omitted).

As Sovran points out, however, the decision in *Russell* did not discuss the availability of federal common law remedies, either for participants, who are granted a variety of express personal remedies by the statute, or more pertinently, for others who, like fiduciaries, are granted no express personal remedies by the statute. The concurring opinion in *Russell* further illuminates this point:

[I]n resolving this and other questions concerning appropriate · relief under ERISA, courts should begin by ascertaining the extent to which trust and pension law as developed by state and federal courts provide for recovery by the beneficiary above and beyond the benefits that have been withheld; this is the logical first step, given that Congress intended to incorporate trust law into ERISA's equitable remedies. If a requested form of additional relief is available under state trust law, courts should next consider whether allowance of such relief would significantly conflict with some other aspect of the ERISA scheme. In addition, courts must always bear in mind the ultimate consideration whether allowance or disallowance of particular relief would best effectuate the underlying purposes of ERISA—enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries.

*Russell,* 473 U.S. at 157–58, 105 S.Ct. at 3098 (Brennan, J., concurring).

■ Congress's failure to include enforcement provisions to address the relationships among fiduciaries does not necessarily mean that congress intended to preclude such remedies. ERISA was designed specifically to provide redress for plaintiffs—the plan's participants and beneficiaries. *See* 29 U.S.C. § 1001. Its remedies do not purport to deal with allocating joint liabilities among fiduciaries, which is the essence of the problem facing us. Although this silence on the contribution issue might be argued to mean that ERISA allows only those claims that directly benefit the plan or a participant, and intentionally bars relief in all other situations, there

is nothing but silence to support this conclusion.

A more likely inference is that when it came to remedies under ERISA, congress simply did not focus its attention beyond the welfare of the plan's participants and beneficiaries. It does not follow, however, that congress would have rejected contribution claims had the issue been expressly considered. On the contrary, congress wanted courts to fill any gaps in the statute by looking to traditional trust law principles. We conclude that incorporating traditional trust law's doctrine of contribution and indemnity into the law of ERISA is appropriate.

## CONCLUSION

We affirm the district court's holding that a former fiduciary does not have standing to sue on behalf of the plan. We reverse the district court's holding that there can be no cause of action for contribution or indemnity under ERISA, and remand the case for further proceedings.

ALTIMARI, Circuit Judge, concurring in part and dissenting in part:

Although I am in great sympathy with the majority's holding and am impressed with its reasoning, I must dissent from that portion of the majority's decision which finds that ERISA provides fiduciaries with causes of action for indemnification and contribution. While the majority's decision makes good sense, such good sense does not always find its way into legislation enacted by Congress, as the statute at issue demonstrates. Therefore, I write separately.

I do not believe that in this instance we can, in effect, legislate that Congress intended to leave open to courts the right to fashion common law remedies of indemnification and contribution under ERISA. Though Congress has endowed courts with the power to formulate federal common law in ERISA cases, it has not given the federal judiciary the power to "engraft a remedy on a statute, no matter how salutary, that Congress did not intend to pro-

vide." *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (quoting *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981)).

It seems clear that Congress was aware that the issue of fiduciary indemnification and contribution was bound to arise under ERISA. Indeed, a section of the statute delineates the circumstances in which a co-fiduciary may be liable for another fiduciary's breach of fiduciary responsibility. *See* 29 U.S.C. § 1105 (1988). Moreover, it is equally apparent that Congress was conscious that the general principles of trust law, upon which ERISA is based, *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989), would allow a breaching fiduciary to obtain indemnification and contribution from other wrongdoers. *See Restatement (second) of Trusts* § 258 (1959). Despite its obvious awareness of both the problem at hand and its potential solution, Congress, in crafting ERISA's "interlocking, interrelated and interdependent remedial scheme," *see Russell,* 473 U.S. at 146, 105 S.Ct. at 3092, failed to provide remedies in favor of breaching fiduciaries. Essentially, Congress' omission of all references to the allocation of costs among fiduciaries for joint liabilities demonstrates its rejection of the scheme of contribution and indemnification adopted by the majority. Simply stated, if Congress had intended to include a right of action for contribution and indemnification it would have done so.

For the reasons set forth above, I would affirm the judgment of the district court in all respects.