David D. DUNCAN, Sr., Walter J. Patterson, Robert M. Sullivan and Charles V. DeGeorge, as Trustees of the Teamsters Health Services and Insurance Plan of Local 404, Plaintiffs,

v.

Robert M. SANTANIELLO, Jay A. Posnik and Savino J. Basile, Individually and as They are Partners d/b/a Santaniello, Posnik, Basile and Rideout, and Edward J. Partyka, Defendants and Third–Party Plaintiffs,

v.

David D. DUNCAN, Sr., Michael J. Catanzaro, Robert M. Sullivan, Charles V. DeGeorge, Individually, Third–Party Defendants.

Civ. A. No. 94–30224–MAP.

United States District Court,
D. Massachusetts.

Sept. 29, 1995.

Matthew E. Dwyer, Grady and Dwyer, Boston, MA, for plaintiffs David D. Duncan, Sr., Walter J. Patterson, Robert M. Sullivan, Charles V. DeGeorge, Trustees of Teamsters Health Services and Insurance Plan of Local 404.

Philip J. Callan, Jr., Michael K. Callan, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for defendants Robert M. Santaniello, Jay A. Posnik, Savino J. Basile, individually and as partners dba Santaniello, Posnik, Basile and Rideout, Edward J. Partyka.

## MEMORANDUM REGARDING PLAINTIFFS' MOTION TO DISMISS THIRD–PARTY COMPLAINT

PONSOR, District Judge.

### I. *INTRODUCTION*

Before the court are the objections of third-party defendants, David D. Duncan, Sr., Michael J. Catanzaro, Robert M. Sullivan, and Charles V. DeGeorge's ("Duncan Defendants") to Magistrate Judge Kenneth P. Neiman's Report and Recommendation Regarding Third–Party Defendants' Motion to Dismiss the Third–Party Complaint (D.Mass. June 2, 1995) (Neiman, U.S.M.J.) ("Report and Recommendation"). In the Report and Recommendation, the Magistrate Judge recommended denying the motion. For the reasons which follow, this court will adopt the Report and Recommendation.

### II. *FACTUAL AND PROCEDURAL BACKGROUND*

The Duncan Defendants specifically contest as an erroneous finding of fact the portion of the Report and Recommendation that states that "the third party complaint . . . seeks to recover assets for the benefit of the Plan's beneficiaries." Report and Recommendation at 10. It would appear that this is more a legal conclusion than a finding of fact. In any event, the court will adopt the portions of the Magistrate Judge's factual background that remain uncontested. Any missing pieces of the legal puzzle will be resolved and put into place in the discussion of the Duncan Defendants' objections below.

### A. *Procedural History*

At the commencement of this case on October 4, 1994, plaintiffs, as Trustees of the Teamsters Health Services and Insurance Plan of Local 404 ("Plan"), filed a complaint against the defendants for violations of the Employee Retirement Income Security Act ("ERISA") and for professional negligence.

On November 4, 1994, defendants as third-party plaintiffs brought a third-party complaint for contribution and indemnification against David M. Duncan, Sr., Michael Catanzaro, Robert M. Sullivan, and Charles V. DeGeorge ("Duncan Defendants"), who were trustees of the Plan at the times relevant to the initial claim. In seeking to join the third-party defendants, the defendants as third-party plaintiffs contend that the Duncan Defendants breached their fiduciary duties to

the Plan and thus are jointly liable for any damages incurred.[1]

### B. *Factual History*

The Magistrate Judge's Report and Recommendation summarized the facts of the case as follows, without objection:

> In addressing the Duncan Defendants' motion to dismiss, the Court accepts as true the factual allegations in the Defendants' complaint as third-party plaintiffs. The dispute originally arose out of the January, 1990, sale of the Plan's Family Medical Center in Springfield, Massachusetts. The Family Medical Center provided health care services to eligible Plan participants and their beneficiaries. The Plan's trustees began exploring the possibility of selling the Family Medical Center in 1988 or 1989. After negotiations, Grant–Lee, Inc. ("Grant Lee") agreed to purchase the Family Medical Center and to assume its lease, as well as provide specified services to certain Plan participants. Throughout the series of transactions that led up to the January 20, 1990 sale, the Duncan Defendants were acting in their fiduciary capacities to the Plan.
>
> Defendants, pursuant to their obligations as attorneys to the Plan, advised the Duncan Defendants that ERISA prohibited the proposed sale of the Family Medical Center until the United States Department of Labor provided an exemption and approved the financing arrangements. Despite this advice, the Duncan Defendants instructed Defendants to draft the necessary documents to effectuate the sale. Defendant Posnik drafted the documents, but specifically incorporated the contingencies which he previously explained to the Duncan Defendants. The contingencies were set forth in the Asset Purchase Agreement as follows:
>
> > 11. *CONTINGENCIES:* This agreement and the obligations of the parties hereunder are subject to and contingent upon the following, as of the closing . . .
> >
> > d. the parties recognize and acknowledge that the transaction contemplated by this Agreement is a prohibited trans-

> > action under the Employment Retirement Income Security Act of 1974 (ERISA), and the rights and obligations of the parties hereto are subject to and contingent upon the TRUSTEES obtaining from the Secretary of Labor an appropriate exemption therefrom.
>
> Both Grant–Lee and the Duncan Defendants, as Trustees of the Plan, executed the agreement.
>
> Contrary to the conditions of the Asset Purchase Agreement, however, Grant–Lee and the Duncan Defendants began to perform without the Department of Labor's approval of the transaction. The Department of Labor ultimately refused to provide an exemption for the sale. Grant–Lee then commenced legal action against the Plan, which caused the Plan to suffer substantial expense. This lawsuit ensued.

Report and Recommendation at 3–4.

### III. *STANDARDS OF REVIEW*

### A. *De Novo Review*

■ A dissatisfied litigant may obtain review of a dispositive pretrial motion issued by a magistrate judge by filing an objection to the report and recommendation in the district court. The district court uses a *de novo* standard of review, which does not require a new hearing. Rules for United States Magistrates (Local Rule 3(b)); *see also Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court may accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. *See Paterson–Leitch v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990–991 (1st Cir.1988) (*citing* Fed.R.Civ.P. 72); *see also* 28 U.S.C. § 636(b)(B).

### B. *FED.R.CIV.P. 12(B)(1) and (6)*

■ The appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint, the plaintiffs are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232,

---

**1.** As can be seen in the caption, three of the four third-party defendants are also plaintiffs.

236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, the court must accept as true all the factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Bergeson v. Franchi,* 783 F.Supp. 713 (D.Mass.1992), *citing Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). If under any theory the complaint is "sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987); *Cuddy v. Boston,* 765 F.Supp. 775, 776 (D.Mass.1991).

## IV. *DISCUSSION*

The Duncan Defendants generally object to the Report and Recommendation on the grounds that it is premised on erroneous conclusions of law. This contention requires the court to address issues of first impression in this circuit, regarding both the appropriate federal common law to be applied under ERISA, and ERISA's standing provision. Specifically, the court must address whether fiduciaries have standing and the right to pursue contribution and indemnity from other fiduciaries if they are found to be jointly liable for harm to an ERISA plan.

In reaching its conclusion on defendants' objections, this court has relied heavily on the Second Circuit's well reasoned opinion in *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12 (2d Cir.1991), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992). In *Chemung,* the Court of Appeals found there was a right to contribution and indemnity under ERISA, based upon principles of traditional trust law. *Id.*

### A. *Right of Contribution/Indemnification*

ERISA has been described as "a comprehensive and reticulated statute." *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). Both the third-party plaintiffs and the Duncan Defendants agree that there is no *express* provision for contribution under ERISA. However, among its enforcement mechanisms the statute does recognize the need for the common law development of equitable remedies:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from such breach and to restore to such plan any profits of such fiduciary which have been made through use of any assets of the plan by the fiduciary, *and shall be subject to such other equitable or remedial relief as the Court shall deem appropriate,* including removal of such fiduciary.

29 U.S.C. § 1109(a). (Emphasis added).

Moreover, the Supreme Court has left no doubt that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) *(quoting Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). Since ERISA "abounds with the language and terminology of trusts," courts must look to traditional principles of trust law to determine the extent of the common law development envisioned by Congress. *Mertens v. Hewitt Assoc.,* —— U.S. ——, ——, 113 S.Ct. 2063, 2073, 124 L.Ed.2d 161 (1993). Unequivocally, traditional trust law permits a right of contribution amongst fiduciaries. Section 258, Restatement of Trusts, 2d (1959).

Many circuits have recognized various federal common law rights under ERISA, including the right to contribution among fiduciaries. *See In re Masters, Mates & Pilots Pension Plan,* 957 F.2d 1020 (2d Cir. 1992) (settlement without approval of non-settling co-fiduciaries is improper because it precluded their subsequently seeking contribution if themselves adjudged liable); *Dardaganis v. Grace Capital, Inc.,* 889 F.2d 1237, 1241 (2d Cir.1989) (trustees may be liable for separate suits for contribution); *Cohen v. Baker,* 845 F.Supp. 289, 291 (E.D.Pa.1994) (right to contribution among breaching fiduciaries is a right of federal common law); *Harris Trust & Savings Bank*

*v. Salomon Brothers, Inc.,* 832 F.Supp. 1169, 1177–79 (N.D.Ill.1993) (same); *Maher v. Strachan Shipping Co.,* 817 F.Supp. 43, 44 (E.D.La.1993) (third-party complaint alleging co-fiduciary violation permitted, adopting analysis of the Second Circuit); *Emmons v. Equitable Life Assurance Soc. of the United States,* 799 F.Supp. 1123, 1125 (D.N.M.1992) (same); *Jones v. Trevor, Stewart, Burton and Jacobsen, Inc.,* CA 1:90CV0420JOF, 1992 WL 252137 (N.D.Ga. Aug. 21, 1992) (even though former fiduciary lacked standing to sue on behalf of the Plan he could seek contribution from other fiduciaries).

Likewise, the First Circuit has held that federal courts have the power to fashion similar ERISA federal common law rights and obligations. *Kwatcher v. Massachusetts Serv. Emp. Pension Fund,* 879 F.2d 957, 965–966 (1st Cir.1991) (applying federal common law to permit restitution); *Nash v. Trustees of Boston University,* 946 F.2d 960, 965 (1st Cir.1991) (federal courts "in the interests of justice, would engage in interstitial lawmaking in ERISA in much the same way as the Courts fashioned a federal common law of labor relations under [Section 301 of the Labor Management Relations Act].") Most recently, the First Circuit has stated that it favors such interstitial lawmaking where the remedy is designed and directed toward recovering plan assets. *Reich v. Rowe,* 20 F.3d 25, 33 (1st Cir.1994).

Recognition of the right to contribution and indemnity is consistent with Justice Brennan's concurring opinion in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), which suggests that common law causes of action may be recognized if they do not conflict with ERISA's enforcement scheme, if they promote enforcement of strict fiduciary standards of care, and if they promote the participants' and beneficiaries' best interests. 473 U.S. at 157–158, 105 S.Ct. at 3098. The third-party plaintiffs' complaint meets these standards, as it serves to enhance the enforcement of fiduciary responsibilities by making all fiduciaries ultimately accountable for harm done to the plan.

In arguing that contribution and indemnification should not be recognized under ERISA, the Duncan Defendants rely on the statutory analysis in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). This test considers such factors as the language of the statute, the legislative history and the underlying purpose and structure of the statutory scheme, in determining whether Congress intended to create a private "right of action" for the benefit of the plaintiff. However, as the Second Circuit noted in *Chemung,* the *Cort* test is not controlling because contribution/indemnification is not an implied private "right of action," but simply a procedural device for equitably distributing liability among those responsible for plaintiff's losses. 939 F.2d at 15–16. The four tests of *Cort* are not designed to ferret out Congressional intent pertaining to contribution among breaching fiduciaries. *Id.*

In sum, the court finds that the federal common law right to contribution should be extended to the third-party plaintiffs based on the principles of trust law and the promotion of strict fiduciary standards of care. As such, the third-party plaintiffs have adequately asserted a claim upon which relief may be granted.

### B. *Standing*

■ The Duncan Defendants further object to the third-party plaintiffs' attempt to assert standing to bring a claim for contribution. ERISA provides that only a fiduciary, a beneficiary, or the Secretary of Labor may commence an action under ERISA. 29 U.S.C. § 1132(a). As a result, the Duncan Defendants argue that, as *former* fiduciaries, the third-party plaintiffs do not have standing to bring claims under ERISA. This argument is unpersuasive for the following reasons.

Fed.R.Civ.P. 14(a) expressly allows for third-party claims against "a person not a party to the action who is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." The rule provides a simple structure for asserting claims for contribution and indemnification, conserving judicial resources

by simplifying the mechanisms for determining distribution of liability as between named and any originally unnamed parties.

Claims for contribution and indemnification between fiduciaries are not to be a viewed as a "right of action" under the Plan or under Section 502 of ERISA, but merely as "an equitable method of distributing liability." *Chemung*, 939 F.2d at 12. As *Chemung* holds, although former fiduciaries cannot bring contractual counterclaims under ERISA, they *may* seek contribution from their co-fiduciaries for the direct claims being brought against them as members of a larger culpable group. *Id.* at 16.

Such is precisely the case offered by the present third-party plaintiffs, who as former fiduciaries are merely attempting to make the Duncan Defendants share in any responsibility for damages the entire fiduciary group may owe to the plan. It would be unjust to allow these plaintiff-fiduciaries to proceed against their former co-fiduciaries while themselves escaping responsibility for what may prove to be collective misfeasance or malfeasance. Under these circumstances, the subject matter jurisdiction of the federal court is satisfied regardless of the status of the party impleading the former co-fiduciary. *See Jones, supra* 1992 WL 252137, **4–**5.

Furthermore, the First Circuit has previously rejected restrictive interpretations of standing for ERISA purposes:

> The doctrine of standing is concerned with whether a person is the proper party to request adjudication of a particular issue, whether a person has alleged such a personal stake in the outcome of the justiciable controversy that he should be entitled to obtain its judicial resolution. Standing focuses on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated.

*Vartanian v. Monsanto Co.*, 14 F.3d 697, 701–702 (1994) (*citing Astor v. Int'l Business Machines Corp.*, 7 F.3d 533, 538–539 (6th Cir.1993)). Congress intended to remove jurisdictional and procedural obstacles in an effort to enhance the enforcement of fiduciary responsibilities. *Id.*

Accordingly, the court finds that the third-party plaintiffs may pursue the current action for contribution regardless of the fact that they are no longer fiduciaries of the Plan.

## V. CONCLUSION

For the reasons listed above, the court ADOPTS the Magistrate Judge's Report and Recommendation in its entirety. The Third-party defendants' motion to dismiss is DENIED.

## REPORT AND RECOMMENDATION REGARDING THIRD–PARTY DEFENDANTS' MOTION TO DISMISS THE THIRD–PARTY COMPLAINT

June 2, 1995

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs filed the original complaint against Defendants for violations of the Employee Retirement Income Security Act ("ERISA") and professional negligence. Currently, third-party Defendants, David D. Duncan, Sr., Michael J. Catanzaro, Robert M. Sullivan, and Charles V. DeGeorge ("Duncan Defendants"), are moving to dismiss the third-party complaint on grounds that there is no right to contribution or indemnification among ERISA fiduciaries. Pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts, the Duncan Defendants' motion to dismiss the third-party complaint has been referred to the Court for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends denying the Duncan Defendants' motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Plaintiffs filed suit against the Defendants on October 4, 1994. The Plaintiffs consist of David D. Duncan, Sr., Walter J. Patterson, Robert M. Sullivan, and Charles V. DeGeorge as current Trustees of the Teamsters

Health Services and Insurance Plan of Local 404 ("Plan"). The Plan is an employee welfare benefit plan that is governed by the provisions of ERISA, 29 U.S.C. § 1001 *et seq.* The Defendants Robert M. Santaniello, Jay A. Posnik and Savino J. Basile were sued individually and as partners in the law firm of Santaniello, Posnik and Basile. An attorney in the firm, Edward J. Partyka, is the fourth Defendant. Defendant Jay A. Posnik began representing the Plan and the Trustees in 1984, while the remaining Defendants began serving as legal representatives to the Plan in 1989.

On November 4, 1994, Defendants brought a third-party complaint against David M. Duncan, Sr., Michael Catanzaro, Robert M. Sullivan, and Charles V. DeGeorge—the Duncan Defendants—who were trustees of the Plan at all relevant times. The Duncan Defendants are all the same individuals as the Plaintiffs in the action, except for Mr. Catanzaro, who was evidently replaced by Walter J. Patterson as trustee. The Duncan Defendants, however, are named in their individual capacities and are sued for contribution and indemnification. Defendants claim that the Duncan Defendants breached their fiduciary duties to the Plan.

### B. Factual History

In addressing the Duncan Defendants' motion to dismiss, the Court accepts as true the factual allegations in the Defendants' complaint as third-party plaintiffs. The dispute originally arose out of the January, 1990, sale of the Plan's Family Medical Center in Springfield, Massachusetts. The Family Medical Center provided health care services to eligible Plan participants and their beneficiaries. The Plan's trustees began exploring the possibility of selling the Family Medical Center in 1988 or 1989. After negotiations, Grant–Lee, Inc. ("Grant Lee") agreed to purchase the Family Medical Center and to assume its lease, as well as provide specified services to certain Plan participants. Throughout the series of transactions that led up to the January 20, 1990 sale, the Duncan Defendants were acting in their fiduciary capacities to the Plan.

Defendants, pursuant to their obligations as attorneys to the Plan, advised the Duncan Defendants that ERISA prohibited the proposed sale of the Family Medical Center until the United States Department of Labor provided an exemption and approved the financing arrangements. Despite this advice, the Duncan Defendants instructed Defendants to draft the necessary documents to effectuate the sale. Defendant Posnik drafted the documents, but specifically incorporated the contingencies which he previously explained to the Duncan Defendants. The contingencies were set forth in the Asset Purchase Agreement as follows:

11. *CONTINGENCIES:* This agreement and the obligations of the parties hereunder are subject to and contingent upon the following, as of the closing ...

d. the parties recognize and acknowledge that the transaction contemplated by this Agreement is a prohibited transaction under the Employment Retirement Income Security Act of 1974 (ERISA), and the rights and obligations of the parties hereto are subject to and contingent upon the TRUSTEES obtaining from the Secretary of Labor an appropriate exemption therefrom.

Both Grant–Lee and the Duncan Defendants, as Trustees of the Plan, executed the agreement.

Contrary to the conditions of the Asset Purchase Agreement, however, Grant–Lee and the Duncan Defendants began to perform without the Department of Labor's approval of the transaction. The Department of Labor ultimately refused to provide an exemption for the sale. Grant–Lee then commenced legal action against the Plan, which caused the Plan to suffer substantial expense. This lawsuit ensued.

### III. STANDARD OF REVIEW

A motion to dismiss is designed to test the legal sufficiency of the complaint: "The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Calero–Colon v. Betancourt Lebron, et al.,* 1995 WL 35758 (D.Puerto Rico), citing

*Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). A motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), requires the Court to accept the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause. *Pihl v. Massachusetts Dep't of Educ.,* 9 F.3d 184, 187 (1st Cir.1993); *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992).

 The appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint, the claimants are entitled to offer evidence in support of their causes of action. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). If the complaint is sufficient to state a cause of action in accordance with the law, under any theory, the court must deny a motion to dismiss. *Wehringer v. Powers & Hall,* 1995 WL 40643 (D.Mass.) and *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994), both citing *Knight v. Mills,* 836 F.2d 659, 664–65 (1st Cir.1987). The First Circuit has stated that it will affirm a dismissal for failure to state a claim only if it clearly appears, according to the facts alleged, that the claimant cannot recover on *any* viable theory. *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 998 (1st Cir.1992).

## IV. DISCUSSION

Faced with claims that they not only breached their fiduciary duties to the Plan but also committed professional negligence, Defendants (attorneys to the Plan) brought a third-party complaint against the individual trustees of the Plan (the Duncan Defendants), alleging parallel breaches of fiduciary duty. Thus, in the event judgment is entered against them, Defendants are seeking indemnification and/or contribution from the Duncan Defendants. The issue facing the Court is whether ERISA creates a right of contribution or indemnification among such fiduciaries. After analyzing the relevant case law and recognizing that the issue is one of first impression in this Circuit, the Court finds that such a right of contribution or indemnification does indeed exist and that Defendants have standing to pursue it.

### A. Right of Contribution/Indemnification

The parties correctly agree that ERISA does not expressly provide for a right of contribution or indemnification. There is little support, however, for the Duncan Defendants' position that, simply because there is no express statutory language, there are no contribution or indemnification rights available. In fact, "mere Congressional silence equally supports a determination that the right to contribution exists." *Cohen v. Baker,* 845 F.Supp. 289, 291 (E.D.Pa.1994), citing *Chemung Canal Trust Company v. Sovran Bank/Maryland,* 939 F.2d 12, 18 (2d Cir. 1991), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992). Despite the fact that ERISA does not explicitly provide for contribution among co-fiduciaries, the Court finds beyond a doubt that Congress intended for courts to develop a federal common law under ERISA, *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989), and that ERISA permits a claim for contribution among fiduciaries. This is supported by ERISA's statutory language, its legislative history, and its underlying purpose.

Congress enacted ERISA in order to establish "judicially enforceable standards to insure honest, faithful and competent management of pension and welfare funds" and "reduce substantially the potentialities for abuse" by fiduciaries. *Massachusetts Mutual Life Insurance, Co. v. Russell,* 473 U.S. 134, 140 n. 8, 105 S.Ct. 3085, 3089 n. 8, 87 L.Ed.2d 96 (1985). Among its enforcement mechanisms, Congress provided the following:

Any person who is fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, *and shall be subject to such other equitable or remedial relief as the*

*court may deem appropriate,* including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). There is persuasive evidence that this remedial scheme created by Congress foresaw the development of a common law right to contribution. See *In re Masters Mates & Pilots Pension Plan,* 957 F.2d 1020, 1027 (2d Cir. 1992) (federal common law governs what is permissible in a settlement of ERISA claims); *Dardaganis v. Grace Capital, Inc.,* 889 F.2d 1237, 1241 (2d Cir.1989) (trustees are subject to suits for contribution); *Cohen v. Baker,* 845 F.Supp. 289, 291 (E.D.Pa.1994) (the right to contribution among breaching fiduciaries is a right of federal common law); *Harris Trust & Savings Bank v. Salomon Brothers, Inc.,* 832 F.Supp. 1169, 1177–1179 (N.D.Ill.1993) (the right to contribution among breaching fiduciaries is a right of federal common law); *Maher v. Strachan Shipping Co.,* 817 F.Supp. 43, 44 (E.D.La. 1993) (third-party complaint alleging a co-fiduciary violation allowed); *Emmons v. Equitable Life Assurance Soc. of the United States,* 799 F.Supp. 1123, 1125 (D.N.M.1992) (third-party complaint alleging a co-fiduciary violation allowed); *Jones v. Trevor, Stewart, Burton and Jacobsen, Inc.,* 1992 WL 252137 (N.D.Ga.1992) (former fiduciary lacks standing to sue on behalf of the Plan, but can seek contribution from other fiduciaries); and *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 464 (7th Cir.1991), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) (non-settling defendant has right of contribution under ERISA).

The First Circuit itself has held that the federal courts have the power to fashion federal common law of rights and obligations under ERISA. *Nash v. Trustees of Boston University,* 946 F.2d 960, 965 (1st Cir.1991); *Vartanian v. Monsanto Co.,* 14 F.3d 697, 703 (1st Cir.1994); *Kwatcher v. Massachusetts Serv. Emp. Pension Fund,* 879 F.2d 957, 965–966 (1st Cir.1989); *Malden Mills Indus., Inc. v. Alman,* 971 F.2d 768, 774–775 (1st Cir.1992). Indeed, the First Circuit has indicated that it supports such interstitial lawmaking where the remedy is designed and directed toward recovering plan assets. *Reich v. Rowe,* 20 F.3d 25, 33 (1st Cir.1994).

ERISA expressly fosters redress for a plan's beneficiaries by providing for a strict fiduciary duty of care. 29 U.S.C. §§ 1001(b) and 1109. Congress was clearly concerned with ensuring that breaching fiduciaries were held personally liable. In fact, the legislative history indicates that Section 502, 29 U.S.C. § 1132, the fiduciary responsibility section of ERISA, codifies and makes applicable to co-fiduciaries certain principles developed in the law of trusts. 1974 U.S.Code Cong. and Admin.News, pp. 4639, 4649–4651. Since Section 405(a) of ERISA, 29 U.S.C. § 1105(a), already creates joint and several liability among co-fiduciaries under certain circumstances, the Court does not find it illogical to assume that Congress intended for the courts to create a right of contribution or indemnification among fiduciaries. Indeed, the Court finds that there is more support for the argument that such a right exists than that it does not. Since Congress did not specifically address the procedural mechanisms of apportioning liability, the Court, pursuant to 29 U.S.C. § 1109(a), must simply determine the mechanisms necessary to provide redress for beneficiaries.

In light of the abundance of ERISA's statutory language utilizing trust terminology, the Court looks to the traditional principles of trusts to determine the common law of rights and obligations under ERISA-regulated plans. *Mertens v. Hewitt Assoc.,* —— U.S. ——, ——, 113 S.Ct. 2063, 2073, 124 L.Ed.2d 161 (1993). In that regard, It is unequivocal that the traditional law of trusts supports a right of contribution among fiduciaries. Section 258 of the Restatement of Trusts, Second, for example, provides that two trustees are each entitled to contribution from the other when they are individually liable to the beneficiary for a breach of trust. Considering the mandate of 29 U.S.C. § 1109(a) and its intent to allow federal courts to develop common law, this Court finds support for the conclusion that Congress envisioned a right to contribution among fiduciaries.

Recognizing the rights of contribution or indemnification among breaching co-fiduciaries promotes two of ERISA's goals: (1) enforcement of strict fiduciary standards of care in the administration of pension plans

and (2) promotion of the beneficiaries' best interests. *Chemung,* 939 F.2d at 18, quoting *Russell,* 473 U.S. at 157–158, 105 S.Ct. at 3098. The right of contribution helps hold all of the potentially responsible fiduciaries liable and encourage them to uphold strict fiduciary standards of care in the administration of a plan. Beneficiaries can potentially recover their full loss, since each breaching fiduciary would be jointly and severally liable. *Chemung,* 939 F.2d at 16. Beneficiaries of a plan also have an interest in avoiding duplicative and expensive lawsuits. While there is little doubt, in the present matter, that a Plan beneficiary could bring a direct action against the Duncan Defendants for breach of fiduciary duty arising out of the Grant–Lee transaction, neither the statutory scheme in general, nor the Plan, in particular, would be served by such multiple lawsuits.

Further, it is misleading to characterize a claim for contribution as a right of action not designed for the benefit of a plan. *Chemung,* 939 F.2d at 15. It is simply a procedural device intended to equitably distribute responsibility among those potentially responsible for losses. *Id.* at 16. The third-party complaint in the present action, for example, seeks to recover assets for the benefit of the Plan's beneficiaries. Since the third-party complaint could fairly and equitably distribute the liability among responsible parties, the Court recommends allowing the Defendants' contribution claim to proceed. Without an obligation to contribute, the Duncan Defendants could avoid responsibility even if their alleged fiduciary abuses are proven. Congress did not contemplate such a result. Rather, the Court believes that ERISA allows the very type of claim for contribution among fiduciaries sought here. Both the Defendants and the Duncan Defendants should share the cost to the extent they breached their respective fiduciary responsibilities. 29 U.S.C. § 1109(a) and § 1105(a)(1), (3).

## B. Standing

ERISA provides that only a fiduciary, a beneficiary, or the Secretary of Labor may commence an action under ERISA. 29 U.S.C. § 1132(a). In the instant matter, however, Defendants' fiduciary status ended by March of 1993, at the latest, and their third-party action was not commenced until November 28, 1994. As a result, the Duncan Defendants assert that the Defendants, as *former* fiduciaries to the plan, have no standing to bring claims under ERISA. *Blackmar v. Lichtenstein,* 603 F.2d 1306 (8th Cir. 1979) (a former fiduciary does not have standing to sue on behalf of the Plan, even where he was removed for the very purpose of preventing him to bring suit.) The Court rejects this analysis.

Standing to pursue claims on behalf of the plan and the right to seek contribution are mutually exclusive. *Chemung,* 939 F.2d at 15. In *Chemung,* for example, the counterclaims by a former trustee against a successor trustee, alleging breaches of a fiduciary duty *after* the former trustee no longer had status under 29 U.S.C. § 1132(a), were indeed dismissed on standing grounds. But the court permitted the former trustees' claims for contribution to proceed, because those claims were limited to and arose within the same time frame that the direct claims against them had arisen.

In the present case, the Defendants, as alleged former fiduciaries, make no claim against the Duncan Defendants for breaches which may have occurred outside the events giving rise to the lawsuit. Under such circumstances, a court can find standing for claims of contribution regardless of the status of the party impleading the former co-fiduciary. See *Jones v. Trevor, Stewart, Burton and Jacobsen, Inc.,* 1992 WL 252137, **4–**5 (N.D.Ga.). The First Circuit has also rejected restrictive interpretations of standing for ERISA purposes:

> The doctrine of standing is concerned with whether a person is the proper party to request adjudication of a particular issue, whether a person has alleged such a personal stake in the outcome of the justiciable controversy that he should be entitled to obtain its judicial resolution. Standing focuses on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated.

*Vartanian,* 14 F.3d at 701–702, citing *Astor v. Int'l Business Machines Corp.,* 7 F.3d 533, 538–539 (6th Cir.1993).

Defendants' third-party complaint meets these standards. Congress intended to remove, not create, jurisdictional and procedural obstacles in an effort to enhance enforcement of fiduciary responsibilities. *Id.* Accordingly, although the Defendants were not fiduciaries to the Plan at the time of the filing of the third-party complaint, the Court finds they have standing to bring the current third-party action for contribution or indemnification.

## V. CONCLUSION

Congress did not intend for potentially culpable fiduciaries, such as the Duncan Defendants, to escape liability simply on the fortuity of which fiduciary is sued. Without a right to contribution or indemnification among fiduciaries, the goals of Congress in enacting ERISA cannot be fully achieved. Defendants have stated a claim upon which relief can be granted and they have standing to pursue it.

For the above reasons, this Court recommends that the Duncan Defendants' motion to dismiss the third-party complaint be DENIED in all respects.[1]

---

1. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986); *U.S. v. Vega,* 678 F.2d 376, 379 (1st Cir.1982). *See also Thomas v. Arn,* 474 U.S. 140, 154–155, 106 S.Ct. 466, 474–475, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).