Jeffery EMMONS, Plaintiff,

v.

**EQUITABLE LIFE ASSURANCE SO-CIETY OF the UNITED STATES, et al., Defendants.**

**W.E.K. Drilling Company, Inc., Defendant–Crossclaimant,**

v.

**EQUITABLE LIFE ASSURANCE SO-CIETY OF the UNITED STATES, Defendant–Crossdefendant.**

No. CIV 88–0903 JB.

United States District Court, D. New Mexico.

July 27, 1992.

Charles C. Currier, Hunt & Currier, Roswell, N.M., for plaintiff.

Victor R. Ortega, Montgomery & Andrews, Albuquerque, N.M., Eliot R. Good, Kirk N. Gibbons, Philip F. Brown, Chorpenning, Good, Gibbons & Cohn, Columbus, Ohio, for defendant Allstate.

Ernest L. Carroll, Dean B. Cross, Losee, Carson, Haas & Carroll, Artesia, N.M., for defendant W.E.K. Drilling.

Benjamin Silva, Jr., Modrall, Sperling, Roaehl, Harris & Sisk, Albuquerque, N.M., for defendants Equitable Life Assur. Soc. and Min. & Extracting Industries Trust.

## MEMORANDUM OPINION
## AND ORDER

BURCIAGA, Chief Judge.

THIS MATTER is before the Court on Defendant Equitable Life Assurance Society's ("Equitable") June 15, 1990 motion to dismiss Defendant W.E.K. Drilling Co.'s ("WEK") first amended crossclaim for indemnification and damages for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For purposes of discussion, the crossclaims are divided into two categories:

1) Counts I, II, and III, alleging claims for indemnification for all losses, costs, and legal fees incurred as a result of Equitable's alleged failure to properly notify WEK or Plaintiff of plan options for a disabled employee; to advise Plaintiff of his rights under the employee benefit plan ("the plan") established by WEK; and to advise WEK of the assignment of Equitable's rights and obligations under the plan.

2) Counts IV, V, and VI, alleging claims for damages pursuant to alleged violations of the Trade Practices and Fraud Act of New Mexico's Insurance Code, N.M.Stat.Ann. §§ 59A–16–1 to –30 (1978).

Having reviewed the pleadings and the relevant law, the Court finds:

as to 1), Equitable's motion is not well taken, and will be denied as to Counts I, II, and III;[1] and

as to 2) Equitable's motion is well taken, and will be granted as to as to Counts IV, V, and VI.

## FACTS

While employed by WEK, Plaintiff was rendered a quadriplegic in a non-work-related accident and has since been unable to resume full-time work for WEK. At the time of his injury, Plaintiff was covered under a group health, life and accident insurance policy issued by Equitable with premiums paid entirely by WEK. After the accident, WEK placed Plaintiff on a "leave of absence" and continued to pay his insurance premiums, first to Equitable and then to Allstate Life Insurance Company ("Allstate"). Allstate, which had assumed some of Equitable's WEK-related liabilities, paid Plaintiff's claims until it discovered it had not assumed liability for his claims.[2] After Allstate rejected Plaintiff's claims,

---

1. See footnote 2.

2. On January 27, 1992 this Court dismissed Allstate from this suit. The dismissal may have rendered all or part of Count III of the crossclaim moot. To the extent Count III is not moot, this Opinion is authoritative.

Equitable, on December 6, 1984, placed Plaintiff on "extended benefit" status for a year, retroactive to June 30, 1984, and paid his claims for that period. WEK terminated Plaintiff on Dec. 19, 1984 and gave notice he had to convert his health coverage with either Equitable or Allstate. Equitable denied Plaintiff's conversion request and cancelled Plaintiff's health insurance coverage on June 29, 1985, when Plaintiff's extended benefit status ran out. Equitable allegedly failed to notify either WEK or Plaintiff of plan options for a disabled employee and to advise Plaintiff of his right to convert insurance when his insurance ran out. Plaintiff brings his claims pursuant to the Employee Retirement Income and Security Act, 29 U.S.C. §§ 1001–1382 (1982) ("ERISA") and state common law negligence for damages he allegedly suffered when his employee health insurance coverage was discontinued.

■ For the purposes of a motion to dismiss, the material allegations of the Complaint must be accepted as true. *Franklin v. Meredith*, 386 F.2d 958, 959 (10th Cir.1967). The Complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court shall construe the pleadings liberally, and if there is any possibility of relief the case should not be dismissed. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir.1973).

### EQUITABLE'S MOTION TO DISMISS WEK'S CROSSCLAIMS FOR INDEMNIFICATION

Equitable argues the Court must dismiss WEK's indemnification claims because, if the claims are state law claims, they must be based on state common law and ERISA preempts state common law claims. Equitable alternatively contends if the claims are under ERISA, the statute neither expressly nor impliedly allows a right of action for indemnification by fiduciaries or trustees. Citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) and *Call v. Sumitomo Bank of California*, 689 F.Supp. 1014 (N.D.Cal.1988), Equitable argues ERISA's exclusive remedy scheme precludes an equitable cause of action arising from 29 U.S.C. § 1132(a)(3). It claims purchase of insurance to cover the potential liability of a fiduciary under an employee benefit plan, *see* 29 U.S.C. § 1110, is the only means by which an employer can shield itself from exposure from breach of fiduciary duties under ERISA.

WEK argues ERISA provides for equitable remedies pursuant to § 1132(a)(3) and embodies the principles of trust law. WEK claims indemnification, an equitable tenet of trust law, is therefore comprised in ERISA.

■ This Court previously ruled ERISA preempts state common law claims. *See* CV No. 88–0903JB, Slip Op. (D.N.M. Sept. 15, 1989). Therefore, the Court grants the motion to dismiss the indemnification claims to the extent the claims are based on state common law. Accordingly, to sustain an indemnification claim, ERISA must create the right to indemnification, either expressly or by clear implication, or federal courts must have power to fashion a federal common law encompassing indemnification. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2065–66, 68 L.Ed.2d 500 (1981); *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 15 (2nd Cir.1991). As ERISA does not explicitly address indemnification, the issue is whether ERISA implicitly recognizes that right or whether indemnification is a part of federal common law. Analysis of legislative intent persuades the Court that a fiduciary's right to indemnification under appropriate circumstances is both *implicit in* ERISA and a part of the federal common law of trusts.

■ Four factors are relevant in determining whether a private remedy is implicit in a statute. These factors are guidelines for the courts to weigh under appropriate circumstances, with the central inquiry be-

ing "whether Congress intended to create, either expressly or by implication, a private right of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 578, 99 S.Ct. 2479, 2489, 2490, 61 L.Ed.2d 82 (1978); *see also Cannon v. University of Chicago*, 441 U.S. 677, 690–91, n. 13, 709, 99 S.Ct. 1946, 1954–55, n. 13, 1964, 60 L.Ed.2d 560 (1979); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *contra Chemung Canal*, 939 F.2d at 15. The factors are whether (1) the party seeking the remedy is one of the class for whose especial benefit the statute was enacted, (2) there is any indication of either explicit or implicit legislative intent to create or deny such a remedy, (3) implying such a remedy is consistent with the underlying purposes of the legislative scheme, and (4) the cause of action is one traditionally relegated to state law, in an area basically the concern of states, so that it would be inappropriate to infer a cause of action based solely on federal law. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1976).

■ Pursuant to *Cort*, the first issue is whether WEK is one of the class for whose especial benefit ERISA was enacted. ERISA was created to protect plan participants and beneficiaries. 29 U.S.C. § 1001. WEK is a fiduciary to the extent it exercises discretionary authority or control regarding the management of the plan or selection of fiduciaries. 29 U.S.C. § 1002(21)(A); *see also Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plan*, 563 F.Supp. 653 (C.D.Cal.1983). As a fiduciary, WEK is not one of the class for whose especial benefit ERISA was enacted. Nonetheless, allowing indemnification claims of a fiduciary under the circumstances at bar would enhance ERISA's deterrent effect, thereby promoting the best interests of participants and beneficiaries and serving the purposes of the statute. Furthermore, if WEK is entitled to indemnification, the Court can fashion its award to preclude any adverse effect on Plaintiff. *See Free v. Briody*, 732 F.2d 1331, 1338 (7th Cir.1984).

Analysis of the second factor, legislative intent, begins with the language of the statute. *See Touche Ross*, 442 U.S. at 568, 99 S.Ct. at 2485. WEK relies upon § 1132(a)(3), which reads as follows:

> A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain any other appropriate equitable relief (i) to redress such violations* or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added).[3] WEK argues that this section in conjunction with ERISA's legislative history, as interpreted by the Supreme Court and the Tenth Circuit, authorizes indemnification as an appropriate form of equitable relief for ERISA/trust violations.

> ERISA abounds with the language and terminology of trust law.... ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. §§ 1101–1114, 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the law of trusts.' ... Given this language and history, we have held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987) and H.R.Rep. No. 93–533, p. 11 (1973)).

"The fiduciary responsibility section, in essence, codifies and makes applicable to

---

**3.** Other sections of ERISA relevant to fiduciaries include § 1104, which sets forth fiduciary duties, and § 1105, which delineates when a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan. In essence, a fiduciary is liable under § 1105(a) when he is knowingly culpable, when his omissions enable another fiduciary to commit a breach, or when he has knowledge of another fiduciary's breach and fails to make reasonable efforts to remedy it.

... fiduciaries certain principles developed in the evolution of the law of trusts ... The principles of fiduciary conduct are adopted from existing trust law, but with modifications appropriate for employee benefit plans." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 152–153, n. 6, 105 S.Ct. 3085, 3095–96, n. 6, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring). An early version of ERISA authorized the full range of legal and equitable remedies available in both state and federal courts, but the reference to legal relief was deleted in the final version. *Russell*, at 146, 105 S.Ct. at 3092.

In developing a law of remedies, the Congress intended the federal courts to draw on principles of traditional trust law:

> The objectives of these provisions are to make applicable the law of trusts; ... to establish uniform fiduciary standards to prevent transactions which dissipate or endanger plan assets; and to provide effective remedies for breach of trust. Statement of the Honorable Harrison A. Williams, Jr., 120 Cong Rec. S–15737, August 22, 1974 *Reprinted* [1974] U.S.Code Cong. & Admin.News, pp. 5177, 5186.

*Eaves v. Penn*, 587 F.2d 453, 452 (10th Cir.1989) (§ 1109 allowed rescission and fiduciary's restoration to the fund of lost profits). The Tenth Circuit relied on the Restatement (Second) of Trusts and stated "[t]raditional trust law provides for broad and flexible equitable remedies in cases involving breaches of fiduciary duty". *See also Donovan v. Bierwirth*, 754 F.2d 1049, 1055 (2nd Cir.1985) ("We thus look to principles developed under the common law of trusts, which in large measure remain applicable under ERISA."); *Chemung Canal*, 939 F.2d at 16 (holding that federal courts are authorized to develop a federal common law under ERISA, and in doing so, are to be guided by principles of traditional trust law).

Concluding that Congress intended to incorporate trust law into ERISA, the next issue in the Court's examination of legislative intent is whether state or federal trust law allows indemnification between co-fidu-ciaries. Although New Mexico does not address the issue, it follows the Restatement of the Law of Trusts, *see, e.g., Drake v. Rueckhaus*, 68 N.M. 209, 214, 360 P.2d 395, 398–99 (1961), as does the Tenth Circuit. *See Eaves v. Penn*, 587 F.2d at 462–63. The right to indemnification among co-trustees has long been an integral and universally recognized tenent of trust doctrine. *See* Restatement (Second) of Trusts § 258 (1959); *Chemung Canal*, 939 F.2d at 16. Accordingly, the Court finds implicit legislative intent to provide for a right to indemnification through application of federal common law trust principles.

The third *Cort* guideline requires the Court examine whether indemnification among co-trustees is consistent with the underlying purposes of the legislative scheme: "enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries." *Chemung Canal* at 18 (quoting *Russell*, 473 U.S. at 158, 105 S.Ct. at 3098 (Brennan, J., concurring)). When enacting ERISA, Congress did not focus its attention beyond protecting participants and beneficiaries. Therefore, although the statutory scheme allocates responsibilities and liabilities of co-fiduciaries, it does not provide redress as between fiduciaries. Rather than speculating whether Congress would have rejected indemnification claims, the Court concludes this statutory laguna is forded by looking to traditional trust law. *See Eaves v. Penn*, 587 F.2d at 462–63; *Chemung Canal*, 939 F.2d at 18.

The final *Cort* factor, whether the cause of action is traditionally one relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law, is summarily disposed of. Before ERISA, indemnification for violation of a trustee's duty was available under state or federal law. *See* Restatement (Second) of Trusts § 158; *Drake v. Rueckhaus* (following Restatement); *Eaves v. Penn* (same). As ERISA preempts state common law, *Pilot Life v. Dedeaux*, indemnification for breaches of trust arising out of any act relating to an employee benefit

plan can only be found pursuant to federal law. Therefore, inferring a cause of action based on ERISA and federal common law encompassing traditional principles of trust law is an appropriate requisite to equitably apportioning damages for breach of fiduciary duty. *See* § 1105 (liability for breach of co-fiduciary limited to certain circumstances).

The Court, weighing the *Cort* factors, concludes the balance overwhelmingly indicates the congressional intent to allow indemnification pursuant to ERISA under appropriate circumstances.

The Court's holding is not discordant with *Russell*, which Equitable relies upon. *Russell*,[4] by narrowly focusing on §§ 1109 and 1132(a)(2), left issues of relief beyond § 1109 undecided. *Russell*, 473 U.S. at 139, n. 5, 105 S.Ct. at 3088, n. 5 ("Because respondent relies entirely on [§ 1109(a) ], and expressly disclaims reliance upon [§ 1132(a)(3) ], we have no occasion to consider whether any other provision of ERISA authorizes recovery of extracontractual damages."). "[W]hile it may well be that courts generally may not find implied private remedies in ERISA, the Court's remarks have little bearing on how courts are to go about construing the private remedy that Congress *explicitly* provided in § [1132(a)(3) ].... ERISA's legislative history demonstrates beyond question that Congress intended to graft trust-law principles onto the enforcement scheme." *Id.* at 155–57, 105 S.Ct. at 3097–98 (Brennan, J., concurrence) (emphasis added). "... Thus ERISA was *not* so 'carefully integrated' and 'crafted' as to preclude further judicial delineation of appropriate rights and remedies; far from barring such a process, the statute explicitly directs that courts shall undertake it." *Russell*, 473 U.S. at 156–57, 105 S.Ct. at 3097–98 (Brennan, J., concurring) (empha-

sis in original). Furthermore, such preclusion would render § 1132(a)(3) superfluous.

Nor does this Court find the district court decision in *Call v. Sumitomo Bank of California*, 689 F.Supp. 1014 (N.D.Cal. 1988), *rev'd on other grounds*, 881 F.2d 626 (9th Cir.1989) persuasive. The district court interpreted *Russell* as disallowing *any* implicit remedies pursuant to ERISA. The circuit court declined to give *Russell* such a broad reading. *Id.*, 881 F.2d at 631–32. Moreover, in affirming the district court decision, the Ninth Circuit did not examine § 1132(a)(3), the section relevant to this decision.

The Court also rejects Equitable's contention that the purchase of insurance to cover the potential liability of a fiduciary under an employee benefit plan, *see* § 1110, is the only means by which an employer can shield itself from exposure to breach of fiduciary duties under ERISA. Section 1110 merely voids "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation under [that part of ERISA]"; it does not allocate liability of a culpable fiduciary to a nonculpable fiduciary or preclude equitable relief to a nonculpable or minimally culpable fiduciary. *See also* §§ 1104, 1105.

Consequently, the Court denies Equitable's motion to dismiss WEK's counterclaims for indemnification pursuant to ERISA.

### EQUITABLE'S MOTION TO DISMISS WEK'S CROSSCLAIMS FOR DAMAGES PURSUANT TO NEW MEXICO'S INSURANCE CODE

■ Equitable argues ERISA preempts WEK's crossclaims for damages pursuant to alleged violations of the Trade Practices and Fraud Act of New Mexico's Insurance Code and, therefore, the Court must dis-

---

4. *Russell* interpreted § 1132(a)(2), which provides for appropriate relief under § 1109. *Russell* held that the equitable relief authorized by § 1109 applies only to liability to the plan, not to co-fiduciaries, and therefore, § 1109 precluded a claim for extracontractual and punitive damages to a beneficiary caused by improper or untimely processing of benefit claims. *Russell*,

473 U.S. at 141–42, 105 S.Ct. at 3090. "[T]he six carefully integrated civil enforcement provisions found in [§ 1132(a) ] ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. at 3092 (emphasis omitted).

miss these claims in accordance with 29 U.S.C. § 1144(a) (ERISA preempts all state law causes of action that "relate to ... employee benefit plans"). Equitable further contends ERISA's "insurance saving clause" does not save the applicable state statute from preemption. 29 U.S.C. § 1144(b)(2)(A) (state law that "regulates insurance" is saved from preemption).

In its September 15, 1989 Order this Court found the applicable plan is an employee benefit plan and subject to ERISA; thus, WEK argues only that its statutory claims are saved from preemption because New Mexico's Trade Practices and Fraud Act "regulates insurance" within the meaning of ERISA's saving clause.

Three criteria are relevant in determining whether a state law "regulates insurance" within the meaning of the saving clause. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. Dedeaux.* The Tenth Circuit applied these criteria to a Colorado statute that is for all relevant purposes virtually identical to the sections of the New Mexico statute at issue in this case, NMSA (1978) §§ 59A–16–4(B) and 59A–16–20(A). *Kelley v. Sears, Roebuck and Co.,* 882 F.2d 453 (10th Cir.1989). Determining the statute failed to satisfy two of the three criteria, the Tenth Circuit held ERISA preempted the Colorado statute. Following *Kelley,* this Court also held ERISA preempts claims for misrepresentation and unfair claims practices pursuant to the equivalent sections of the New Mexico statute. *Wexler v. Brokerage Services, Inc.,* No. 88–1487–JB, 1989 WL 379862 (filed Oct. 18, 1989). For these reasons, the Court dismisses WEK's crossclaims for damages pursuant to New Mexico's Trade Practices and Frauds Act.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that Equitable's motion to dismiss Counts I, II, and III of WEK's crossclaim be, and hereby is, denied.

IT IS FURTHER ORDERED that Equitable's motion to dismiss Counts IV, V, and VI of WEK's crossclaim be, and hereby is, granted.