Ronald YOUNGBERG, Plaintiff,

v.

The BEKINS CO., et al., Defendants.

Civ. No. S–95–896 LKK.

United States District Court,
E.D. California.

June 24, 1996.

Jesse S. Kaplan, Law Offices of Jesse S. Kaplan, Sacramento, CA, for plaintiff.

Gordon D. McAuley, Reisinger and McAuley, Inc., San Rafael, CA, for defendant Bekins Co.

Stephen E. Horan, Porter, Scott, Weiberg and Delehant, Sacramento, CA, for defendants Continental Casualty Co. & CNA.

### ORDER

KARLTON, Chief Judge Emeritus.

In this matter Plaintiff, Youngberg, has sued his former employer, Bekins Company (Bekins), and Continental Casualty Company and CNA Insurance Companies (hereinafter referred to as "CNA"), the alleged underwriter and administrator of Bekins' employee benefit plan. He sues pursuant to the Employee Retirement Income and Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, *et seq.*, claiming denial of certain long term disability benefits under Bekins' plan. In turn, Bekins cross-claimed against CNA seeking indemnification. Pending before the court is CNA's motion to dismiss the cross complaint, asserting that indemnification is not available under ERISA.[1] Below, I conclude that Bekins can assert a cross-claim for indemnity, and thus the motion must be denied.

### I.

### THE PLEADINGS[2]

Bekins' benefit plan entitles its employees to certain long term disability benefits. In 1992, plaintiff, claiming he was disabled and unable to work, sought benefits under the plan. In September 1992, CNA notified plaintiff that he was approved for benefits beginning April 23, 1992.

A series of communications between plaintiff and CNA ensued. Plaintiff contended that he was entitled to benefits prior to April 23 and that CNA miscalculated his monthly benefit payments. In addition, plaintiff claimed that he had not received annual increases due him. Because the matter was not resolved to his satisfaction, plaintiff brought this action against Bekins and CNA. He seeks declaratory and injunctive relief under 29 U.S.C. § 1132(a)(1)(B) and attorney's fees under 29 U.S.C. § 1132(g)(1). He also seeks damages for breach of contract.

As noted above, Bekins cross-claimed for indemnification against CNA for all losses, costs, and legal fees incurred in the event that the court holds Bekins liable for payment of benefits to plaintiff. The cross-claim alleges that the plan is administered by Bekins through an insurance contract purchased from CNA, and that CNA, not Bekins, is responsible for the calculation and determination of benefits under the plan.

CNA seeks dismissal of Bekins' counterclaim, arguing that ERISA does not provide for indemnification between co-fiduciaries.

### II.

### DISMISSAL STANDARDS UNDER FED.R.CIV.P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference that can be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn*, 373 U.S. 746, 753, n. 6, 83 S.Ct. 1461, 1465, n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See Id.; see also Wheeldin v. Wheeler*, 373 U.S.

---

1. Alternatively, CNA requests leave to file a cross-claim for indemnification against Bekins. CNA also moves to dismiss plaintiff's state law claims based on ERISA preemption. The court will dispose of these portions of the motion in a companion unpublished opinion. *See Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148, 151, n. 2

(E.D.Cal.1981), *rev'd on other grounds*, 691 F.2d 873 (9th Cir.1982).

2. This portion of the opinion summarizes the pertinent allegations of the complaint and the cross-claim.

647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

█ In general, the complaint is construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

## III.

### INDEMNITY CLAIMS UNDER ERISA

█ The issue before me is whether 29 U.S.C. § 1132(a)(3) permits suit for indemnification by an ERISA plan fiduciary against a co-fiduciary in an action brought by a beneficiary for the miscalculation and insufficient disbursement of benefits due under an employee welfare benefits plan.[3] In arguing

that there is no right to indemnity, CNA relies on two Ninth Circuit cases that rejected an ERISA based right of contribution under 29 U.S.C. §§ 1109 and 1132(a)(2).[4] *See Call v. Sumitomo Bank of CA,* 881 F.2d 626 (9th Cir.1989); *Kim v. Fujikawa,* 871 F.2d 1427 (9th Cir.1989).[5] As I now explain, in light of the Supreme Court's recent decision in *Varity Corp. v. Howe,* — U.S. —, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), that reliance is misplaced. Before turning to *Varity,* I examine the cases relied on by CNA.

In both *Kim* and *Call,* plaintiffs were fiduciaries who had been held liable for mismanagement of plan assets, and sought contribution from other fiduciaries who allegedly participated in the prohibited conduct. *See Call,* 881 F.2d at 629; *Kim,* 871 F.2d at 1429. The Ninth Circuit determined that in light of *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), contribution was not available. *Russell* had held that ERISA does not provide a plan participant with a personal cause of action against a fiduciary for extra-contractual damages caused by improper processing of benefit claims. *Id.* at 148, 105 S.Ct. at 3093. The High Court concluded that the remedies available under 29 U.S.C. §§ 1109 and 1132(a)(2) were limited by the language and purpose of that section, which provides a remedy to protect the plan, rather than individuals. *Id.* at 144, 105 S.Ct. at 3091. The *Kim* and *Call* courts interpreted the *Russell* decision as likewise prohibiting the court from implying a cause

---

**3.** The statute provides that an action may be brought:

"by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

**4.** 29 U.S.C. § 1109 provides that:

"[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ...

and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary...." 29 U.S.C. § 1109(a).

29 U.S.C. § 1132(a)(2) provides that a civil action may be brought "... by a participant, beneficiary, or fiduciary for appropriate relief under section 1109...." 29 U.S.C. § 1132(a)(2).

**5.** *But see Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 16 (2d Cir.1991) (breaching fiduciary of ERISA plan entitled to protection of contribution traditionally granted fiduciary defendants under equitable provisions of trust law); *Free v. Briody,* 732 F.2d 1331, 1337 (7th Cir.1984) (allowing indemnification between fiduciaries); *Maher v. Strachan Shipping Co.,* 817 F.Supp. 43, 45 (E.D.La.1993) (right of indemnity and contribution among co-fiduciaries).

of action by a fiduciary for contribution under 29 U.S.C. §§ 1109 and 1132(a)(2). *See Call*, 881 F.2d at 631; *Kim*, 871 F.2d at 1432.

While *Kim* and *Call* provide controlling authority for a contribution action under 29 U.S.C. §§ 1109 and 1132(a)(2), it appears that no court has considered the possibility of indemnity under 29 U.S.C. § 1132(a)(3) since *Varity*, — U.S. at —, 116 S.Ct. 1065, *supra*. In *Varity*, the Supreme Court considered whether injunctive relief reinstating plaintiffs' rights under their former plan was available in a suit brought by employees against their employer for fraudulently inducing them to transfer jobs, change benefit plans, and forfeit their benefits under their original plan. *Id.* at —, 116 S.Ct. at 1068. The *Varity* Court held that 29 U.S.C. § 1132(a)(3), ERISA's "catchall" provision, provided individualized equitable relief for such a suit. *Id.* at —, 116 S.Ct. at 1077–78. The *Varity* Court distinguished *Russell* on the basis that *Russell* addressed a claim premised on plan asset management, and thus did not limit the kind of relief available to plaintiffs for breaches of fiduciary duty in other contexts. *Id.* at —, 116 S.Ct. at 1076. The Court explained the difference in available relief by noting that 29 U.S.C. § 1109 cross-references 29 U.S.C. § 1132(a)(2), but that 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1109 are not cross-referenced. *Id.*

The Supreme Court's basis for distinguishing *Russell* from *Varity* also suffices to distinguish the matter at bar from *Call* and *Kim.* Unlike the plaintiffs in *Call* and *Kim*, Bekins here is not seeking contribution for an alleged violation of a fiduciary duty for which it would be liable to the plan. Rather, Bekins seeks indemnity under 29 U.S.C. § 1132(a)(3) in the event that Bekins is held liable for the payment of benefits to plaintiff.

*Kim* and *Call* do not control the outcome here, both because they involved a different kind of claim, and because they interpreted different provisions of ERISA. Accordingly, a separate analysis is necessary to determine whether § 1132(a)(3) provides for a suit seeking indemnity from another fiduciary under the facts and circumstances of this case.

■ The question is one of statutory interpretation guided by the obligation of the federal courts to develop "a federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987)).[6] I begin, as I must, with the words of the statute. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)).

Section 1132(a)(3) expressly provides a fiduciary with an equitable remedy for redressing violations of the plan or to enforce the plan. *See* 29 U.S.C. § 1132(a)(3), *supra* note 3. Thus, two questions are presented: whether indemnity is an equitable remedy; and if so, whether this suit for indemnification may be said to seek redress for a violation of the plan or to enforce its provisions.

■ Whether a suit for indemnity is a suit seeking equitable relief is not an issue of ordinary meaning. Rather, the statute employs a legal term of art. Accordingly, I turn to the common law. *See Evans v. U.S.*, 504 U.S. 255, 259, 112 S.Ct. 1881, 1884–85, 119 L.Ed.2d 57 (1992) (familiar maxim that statutory term presumed to carry its common law meaning) (quoting *Taylor v. U.S.*,

---

**6.** The Ninth Circuit has enumerated three related ends for the creation of federal common law in the ERISA context: to supplement ERISA interstitially, to develop standards that ERISA only generally develops, and to develop principles to govern areas of law which were previously governed by state law. *See Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1499 (9th Cir.1984). Finding a right of indemnity serves each of those purposes. First, the relationship among fiduciaries is an interstitial ERISA issue, since the statute's primary focus is on the duties of fiduciaries vis-a-vis beneficiaries. Second, the statute, because it speaks of equitable remedies, speaks in general terms requiring the development of ERISA related standards. Finally, indemnity between fiduciaries was an issue governed by state trust law prior to the adoption of ERISA. *See Varity Corp. v. Howe*, — U.S. —, —, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996).

495 U.S. 575, 592, 110 S.Ct. 2143, 2154–55, 109 L.Ed.2d 607 (1990)).[7] At common law, indemnity was considered a traditional equitable remedy. *See* 42 C.J.S. *Indemnity* § 3 (1991).[8] Thus, I conclude that the first statutory prerequisite to suit is satisfied. It appears to this court that the second prerequisite is equally plainly satisfied.

As a matter of plain language, to the extent Bekins claims that it is liable to plaintiffs only because of CNA's failure to calculate properly or otherwise administer the plan in accordance with its terms, the suit seeks redress for a violation of the plan. Moreover, given that the statute's purpose is to insure that beneficiaries receive the benefits they are entitled to under an employee benefit plan, *see* 29 U.S.C. § 1001, suits in equity further that statutory purpose because they make liable those whose conduct caused the deprivation of benefits.

■ Since both statutory prerequisites for a suit under 29 U.S.C. § 1132(a)(3) are satisfied, I conclude that a suit for indemnity by a fiduciary against a cofiduciary predicated upon the latter's violation of the terms of the plan may be brought under ERISA.

■ Assuming arguendo that the terms of the statute are not dispositive, at the very least they give rise to an ambiguity permitting resort to legislative history. *See Catholic Social Services, Inc. v. Meese,* 685 F.Supp. 1149, 1152 (E.D.Cal.1988). While there does not appear to be explicit legislative history dealing with indemnity, the history demonstrates Congress' intent that principles of trust law govern construction of ERISA. *See* H.R.Rep. No. 93–533, 93d Cong., 2d Sess. (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4651 ("The principles of fiduciary conduct are adopted from existing trust law, but with modifications appropriate for employee benefit plans."). As the Supreme Court has explained, "[r]ather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Varity,* —— U.S. at ——, 116 S.Ct. at 1070 (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985)); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (noting that "ERISA abounds with the language and terminology of trust law."). Given that the right of indemnification among cotrustees was recognized as a fundamental doctrine of trust law during the enactment of ERISA, *see* Restatement (Second) of Trusts § 258 (1959); *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 16 (2d Cir.1991), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992), Congress' expectation that, unless otherwise provided, trust law applies, supports such suits under ERISA.

■ It may be suggested that because the statute does not explicitly use the terms "indemnity suit," the issue is one of an implied right of action under the principles first announced in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[9] For the

---

7. "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Evans v. U.S.,* 504 U.S. 255, 259, 112 S.Ct. 1881, 1885, 119 L.Ed.2d 57 (1992) (quoting *Morissette v. U.S.,* 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952)); *see also U.S. v. Hubbard,* 856 F.Supp. 1416, 1420 (E.D.Cal.1994) ("[W]hen a statute employs a term with a specialized legal meaning relevant to the matter at hand, that meaning governs.") (quoting *Moskal v. U.S.,* 498 U.S. 103, 121, 111 S.Ct. 461, 472, 112 L.Ed.2d 449 (1990) (Scalia, J., dissenting)).

8. "[T]he right of indemnity is essentially equitable in nature, with principles of equity furnishing a more satisfactory basis for indemnity; thus, an award of indemnity should follow traditional concepts of equity." 42 C.J.S. *Indemnity* § 3 (1991) (footnotes omitted).

9. In *Chemung,* the Second Circuit determined that ERISA does not explicitly provide for contribution and indemnity, but that there exists an implied right of action for contribution among defaulting fiduciaries. 939 F.2d at 15–16. The *Chemung* court refrained from finding the implied right under *Cort v. Ash* methodology, however, on the basis that the fiduciary was not a member of the class for whose benefit the legislation was intended. *Id.* at 15. Instead, it held that the incorporation of traditional trust law into the ERISA scheme provided a fiduciary with an implied right to contribution. *Id.* at 16.

reasons set forth above, I do not agree. Nonetheless, even if that were the issue, this court would arrive at the same conclusion.

*Cort* articulates four elements to consider in determining whether Congress intended to create a remedy not specifically set forth in the statute. *See Cort,* 422 U.S. at 78, 95 S.Ct. at 2087–88. Those elements include whether there is any indication of either explicit or implicit legislative intent to create or deny the remedy; whether implying such a remedy is consistent with the underlying purposes of the legislative scheme; whether the party seeking the remedy is one of the class for whose especial benefit the statute was enacted; and whether the cause of action is traditionally relegated to state law in an area basically the concern of states.[10] A mere articulation of the elements, in light of the analysis noted above, suggests that an indemnity suit satisfies the *Cort* factors. *See Emmons v. Equitable Life Assur. Soc. of U.S.,* 799 F.Supp. 1123, 1126–27 (D.N.M. 1992) (implying right of indemnification in ERISA claim).

Those factors leading me to conclude above that an indemnification action is explicitly provided for in § 1132(a)(3), inevitably lead to the conclusion that there is an expression of legislative intent to provide such a remedy. Moreover, as I now explain, ERISA structure supports such a conclusion. *See Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (noting statute's language or structure helpful in determining legislative intent).

 ERISA is a "comprehensive and reticulated statute" containing an "interlocking, interrelated, and interdependent remedial scheme...." *Russell,* 473 U.S. at 146, 105 S.Ct. at 3092. It provides six general enforcement provisions under 29 U.S.C. § 1132(a), four subsections focusing on specific areas of enforcement, and two "catchall" provisions, 29 U.S.C. §§ 1132(a)(3) and 1132(a)(5), that "act as a safety net, offering

appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity,* ―― U.S. at ――, 116 S.Ct. at 1077–78. The provision for "appropriate equitable relief" found in 29 U.S.C. § 1132(a)(3)(B)(ii) precludes the concern that equitable indemnity is a remedy which Congress "simply forgot to incorporate expressly." *Russell,* 473 U.S. at 146, 105 S.Ct. at 3092. Thus, implication of such a remedy does not constitute a judicial rewriting of the statute, but rather, a recognition that such a right is contemplated by the legislative scheme.

 Moreover, as I have noted above, implying a right of indemnity is consistent with the legislative purpose of assuring compliance with fiduciary duties. *See Varity,* ―― U.S. at ――, 116 S.Ct. at 1079 (instructing courts to "keep in mind the 'special nature and purpose of employee benefit plans'") (quoting *Pilot Life Ins. Co.,* 481 U.S. at 54, 107 S.Ct. at 1556–57). A second legislative purpose is also served by implying a right of action. ERISA was created, *inter alia,* to encourage employers to offer and maintain welfare benefit plans to their employees. *Id.* at ――, 116 S.Ct. at 1070. Allowing an employer to secure compensation for another's miscalculation of an employee's benefits furthers that goal, since employers will not fear being held liable for another's wrongdoing. It thus appears that the second *Cort* factor is satisfied.

Concededly, the third factor is more problematic. ERISA was not created for the benefit of fiduciaries but rather as noted above, to protect plan participants and beneficiaries. Nevertheless, as the *Emmons* court observed, an indemnification action ultimately benefits the plan and its beneficiaries. *See Emmons,* 799 F.Supp. at 1126. Allowing one fiduciary to require another to fulfill its obligation to accurately compute

---

While I agree with the Second Circuit that, assuming no explicit right to indemnification in the statute, ERISA provides a fiduciary with an implied right of action to indemnity, it appears to this court, as discussed below, that such a conclusion may be reached under the *Cort v. Ash* analysis as well as through the application of trust law.

10. It has been suggested that evidence of congressional intent to provide a certain remedy has developed into "the determinative factor, with the other three [*Cort*] factors indicative of its presence or absence." *See Thompson v. Thompson,* 484 U.S. 174, 189, 108 S.Ct. 513, 521, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring in the judgment).

benefits under the plan deters breaches by the entity ultimately responsible for calculating benefits, thus benefiting participants as well as fiduciaries.

The Ninth Circuit's observation that "there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers," *Kim*, 871 F.2d at 1433 (quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981)), does not compel a different result. While Congress may not have intended to provide wrongdoing fiduciaries with a cause of action, that consideration is inapposite in an indemnity claim such as the one at issue here. Indemnity exists when "one party is exposed to liability by the action of another who, in law or in equity, should make good the loss of the other." 41 Am.Jur.2d *Indemnity* § 25 at 364 (1995). Unlike contribution, which distributes the loss among jointly and severally liable tortfeasors, an indemnity action is an equitably imposed shifting of the entire burden or loss. *Id.* at 349. Put another way, Bekins asserts that in the event it becomes legally obligated to pay the benefits allegedly due plaintiff, it has participated in no wrongful conduct because it did not have control over the calculation and disbursement of benefits to plaintiff. Thus, the *Kim* court's concern for allowing a remedy for a breaching fiduciary, *see Kim*, 871 F.2d at 1432–33, does not apply here.

Finally, while it is true that state law recognized indemnity among fiduciaries, that fact is not determinative. Whether ERISA has preempted state law relative to indemnity, and thus whether the employer is precluded from resorting to common law, is still unresolved. Accordingly, the court cannot say with certainty that it can "relegate [defendant] to whatever remedy is created by state law." *See Cort*, 422 U.S. at 84, 95 S.Ct. at 2091.

On balance then, it appears to this Court that if the statute does not explicitly allow a suit for indemnity, such a suit should be implied as a matter of federal common law.

## IV.

## ORDER

For all the reasons set forth above, CNA's motion to dismiss Bekins' cross-claim for indemnity is hereby DENIED.

IT IS SO ORDERED.